[No. 14157.        In Bank. — December 14, 1891.]

# In the Matter of the Bonds of the MADERA IRRIGATION DISTRICT.

Constitutional Law — Wright Act — Irrigation Districts. — The act of March 7, 1887, to provide for the organization and government of irrigation districts, etc., commonly known as the Wright Act, is within the power of the legislature to enact; and its provisions for the organization of such districts, and regulating the mode for assessments upon the lands therein with which to meet the bonds authorized by the act, are constitutional and valid.

Id. — Presumption as to Legislative Power. — The presumption which attends every act of the legislature is, that it is within its power; and he who would except it from the power must point out the particular provision of the constitution by which the exception is made, or demonstrate that it is palpably excluded from any consideration whatever by that body.

Id. — Extent of Legislative Power. — The legislature is vested with the whole of the legislative power of the state, and may deal with any subject within the scope of civil government, except so far as it is restrained by the provisions of the constitution, and is the sole tribunal to determine as well the expediency as the details of all legislation within its power.

Id. — Power of Judiciary — Doubtful Legislation — Public Welfare. — Though the courts may investigate whether an act is palpably for private rather than for public benefit, yet if the subject-matter of the legislation be of such a nature that there is any doubt of its character, or if by any possibility the legislation may be for the welfare of the public, the will of the legislature must prevail over the doubts of the court.

Id. — Incidental Advantages to Individuals. — Whenever it appears from the scope of an act that its object is for the benefit of the public, and that the means by which the benefit is to be attained are of a public character, the act will be upheld, notwithstanding incidental advantages may accrue to individuals beyond those enjoyed by the general public.

Id. — Local Public Improvement — Local Taxation. — The legislature may provide for a local public improvement for the benefit of a portion of the state, and may tax all land within a limited district to be benefited by such improvements, notwithstanding some of the property within the district will not receive any benefit, and notwithstanding some property taxed outside of the district may be incidentally benefited.

Id. — Public Corporations — General Laws. — The legislature may by general laws authorize the inhabitants of any district, under such restrictions and with such preliminary steps as it may deem proper, to organize themselves into a public corporation for governmental purposes, and such public corporations need not be required to be formed in the same manner or provided with the same powers as municipal corporations of a different class.

Id. — Classification of Municipal Corporations. — The municipal corporations which may be created under the constitution are not limited to cities and towns; but the legislature may by general laws classify and provide for as many species of municipal corporations as, in its judgment, are demanded by the welfare of the state, and commit to each class such powers only as are peculiarly appropriate thereto.

Id. — Irrigation District — Public Corporation. — An irrigation district organized under the Wright Act becomes a public corporation, and its officers become public officers of the state.

Id. — Discretion of Legislature — Mode of Forming Irrigation District — Rights of Land-owners. — It is within the discretion of the legislature to determine the mode in which an irrigation district shall be formed, and the judiciary cannot question the policy or prudence of the law as it has been enacted; and it is no valid objection that the organization may be compelled by persons not interested in the lands affected thereby, or that the act makes no provision for a hearing from the owners of the land prior to the organization of the district.

Id. — Due Process of Law — Lien of Assessment. — The property of a land-owner within an irrigation district is not taken from him without due process of law, if he is allowed a hearing at any time before the lien of an assessment for taxes levied thereon becomes final.

Id. — Power of Taxation. — The power of the legislature in matters of taxation is unlimited, except as restricted by constitutional provisions, and extends to the providing of assessments for local improvements, upon any basis of apportionment which the legislature may select; and the apportionment does not depend upon the fact of any special local benefit to the tax-payer.

Id. — Indebtedness of Public Corporations. — The provision of article XI., section 18, of the constitution, prohibiting certain public corporations from incurring indebtedness without the assent of two thirds of the qualified electors thereof voting at an election to be held for that purpose, is limited to the corporations specified in that section, and does not apply to irrigation districts, nor render the Wright Act unconstitutional. With respect to such other corporations as under the provisions of section 6 the legislature may by general laws authorize to be incorporated, the constitution has left to the legislature power to provide the terms and conditions upon which an indebtedness may be created, as well as its amount.

Id. — Inclusion of Municipal Corporation in Irrigation District. — The fact that a town or city which has been incorporated may be included within the boundaries of an irrigation district organized under the Wright Act neither renders the act unconstitutional nor invalidates the organization of the district.

Organization of Irrigation District — Defective Bond. — Where an informal bond presented with the petition for organization of an irriga-

tion district is not invalid, and binds those who signed it, the determination of its sufficiency by the board of supervisors is conclusive.

Id. — Petition — Description of Boundaries. — The provision in the statute that the petition for organization of an irrigation district shall particularly set forth and describe the boundaries does not require them to be set forth with more particularity than would be necessary in an act of the legislature creating a political district or a municipal corporation; and where it does not appear that the boundaries given in the petition are so indefinite that the district cannot be definitely located, or that they fail to embrace a distinct and definite territory, the supervisors are not prevented from acquiring jurisdiction to authorize the organization of the district.

Id. — Confirmation Proceeding — Evidence — Execution of Petition — Recital in Records of Supervisors. — In a proceeding for confirmation of the organization of an irrigation district and of an order for the issue and sale of its bonds, where the organization is controverted by the answer, it is necessary for the directors of the district to make proof to the court, under the ordinary rules of evidence, that a petition was presented to the supervisors, signed by fifty or a majority of freeholders owning lands within the proposed district; and the execution of such petition cannot be proved by recital in the records of the board of supervisors, nor can the petition itself be properly received in evidence without proof of its execution, and that the signers were freeholders of the district.

Id. — Form of Bonds — Order for Issuance. — The bonds to be issued by an irrigation district should be in such form that each bond will be payable in installments of such percentage in each year as is designated in the statute; and an order for their issuance making that percentage of the entire issue of the bonds payable in the designated years is not in compliance with the statute, though it does not invalidate the proceedings had for the issuance of the bonds, which should be issued in the form prescribed by the statute.

Id. — Judgment of Confirmation — Injunction. — The judgment of confirmation cannot properly include an injunction debarring all persons interested in the organization of the district from disputing, denying, or disclaiming any facts which might have been disputed in the proceeding.

Appeal from a judgment of the Superior Court of Fresno County.

The facts are stated in the opinion of the court.

*R. E. Houghton, E. W. McKinstry, E. W. McGraw, Octave G. Du Py, Mesick, Maxwell & Phelan, Mesick, Waters & Maxwell, Page & Eells,* and *Pillsbury & Blanding,* for Appellants.

The Wright Act is repugnant to the fourteenth amendment of the constitution of the United States, and of

sections 13 and 14 of article I. of the constitution of California in this, that it provides for the taxation of lands of private individuals in limited districts for the benefit of lands of the state and of the United States. (See *County of Santa Clara* v. *S. P. R. R. Co.*, 18 Fed. Rep. 398.) The law is unconstitutional because the method of assessment provided for is upon an *ad valorem* system, and does not take into consideration the benefits to be conferred on taxable lands. (*Stuart* v. *Palmer*, 74 N. Y. 189; 30 Am. Rep. 289; citing *Kirby* v. *Shaw*, 19 Pa. St. 258; *Schenley* v. *Commonwealth*, 36 Pa. St. 29; 78 Am. Dec. 359; *McGonigle* v. *Alleghany City*, 44 Pa. St. 118; *In re Washington Avenue*, 69 Pa. St. 360; 8 Am. Rep. 255; *Patterson* v. *Society*, 24 N. J. L. 385; *Tide-water Co.* v. *Coster*, 18 N. J. Eq. 519; 90 Am. Dec. 634; *In re Drainage of Lands*, 35 N. J. L. 497; *St. John* v. *E. St. Louis*, 50 Ill. 92; *Lee* v. *Ruggles*, 62 Ill. 427; *In re Albany Street*, 11 Wend. 149; *Litchfield* v. *Vernon*, 41 N. Y. 423. See also *State* v. *Jersey City*, 36 N. J. L. 57; *State* v. *Mayor etc.*, 36 N. J. L. 293; *State* v. *Fuller*, 39 N. J. L. 581; *Kean* v. *Drainage Co.*, 45 N. J. L. 94; *Chamberlain* v. *City of Cleveland*, 34 Ohio St. 561; *State* v. *Mayor of Newark*, 37 N. J. L. 422; 18 Am. Rep. 729; *Graham* v. *Conger*, 4 S. W. Rep. 327; *Conger* v. *Bergman*, 11 S. W. Rep. 84; *Taylor* v. *Palmer*, 31 Cal. 254; *In re Market Street*, 49 Cal. 549; *Schumacker* v. *Toberman*, 56 Cal. 510; *Davies* v. *City of Los Angeles*, 86 Cal. 58.) The act is unconstitutional because, under pretense of furnishing irrigation facilities for agricultural lands, it allows towns, villages, and cities to be included in irrigation districts. (See *Board of Directors of Modesto Irrigation District* v. *Tregea*, 88 Cal. 334; *Reclamation District* v. *Goldman*, 65 Cal. 635, 639.) If the court should conclude that it is competent for the legislature to establish over any given piece of territory in this state as many different municipal corporations as there are separate public wants, yet the legislature is prohibited by the constitution from enacting a law under which any municipal corporation may, by a bare majority vote, incur any indebtedness exceeding in any year the in-

come and revenue provided for it for such year.    (Const., art. XI., sec. 18; *Harshman* v. *Bates County*, 92 U. S. 573; *Bay City* v. *State Treasurer*, 23 Mich. 504; Debates of Const. Com. 1068–1070, 1381–1383.) The act is unconstitutional because no notice or opportunity for a hearing is given to land-owners.    (See *Hagar* v. *Reclamation District*, 111 U. S. 711; *Reclamation District* v. *Goldman*, 65 Cal. 637; *State* v. *Road Commissioners*, 41 N. J. L. 89; *Hutson* v. *Protection District*, 79 Cal. 93.) The legislature had no constitutional power to pass the act. The assumption by the court, that as it has been decided that the legislature had power to pass reclamation acts, it follows necessarily from such decisions that it has power to pass irrigation laws was error, as the power of the legislature to pass the reclamation acts was based on the police power of the state.    (Cooley's Constitutional Limitations, 509; *Kennie* v. *Bare*, 68 Mich. 625; *Anderson* v. *Kerns Draining Co.*, 19 Ind. 199; 77 Am. Dec. 63.) The following cases, in addition to those cited, base the power of the legislature to pass these drainage acts exclusively on the police power of the state to preserve public health: *Donnelly* v. *Decker*, 58 Wis. 461; *State* v. *City Council of Charleston*, 12 Rich. 702; *State* v. *Newark*, 27 N. J. L. 185; *Reeves* v. *Treasurer of Wood Co.*, 8 Ohio St. 333; *Pool* v. *Trexler*, 76 N. C. 297; *Winslow* v. *Winslow*, 95 N. C. 24; *Fleming* v. *Hall*, 73 Iowa, 598. The act is unconstitutional because it provides for issuing bonds and making assessments to assist in a speculation, and provides no limit to expenses.    In that respect it takes private property, without compensation or due process of law, and denies to the owners the equal protection of the laws.    (*In re Drainage on Pequest River*, 39 N. J. L. 433.)    The act is unconstitutional, as being in contravention of sections 4 and 6 of article XI. of the constitution of California, as it authorizes the creation of municipal corporations contrary to the system of municipal government provided for.    (See Const., art. XI., secs. 4, 6; art. XIV., sec. 1; *Modesto Irrigation District* v. *Tregea*, 88 Cal. 334; *Vreeland* v. *Jersey City*, 43 N. J. L. 135; *State* v.

*Inhabitants of Raritan,* 52 N. J. L. 319; *State v. Comm'rs of Englewood,* 41 N. J. L. 154; *Shumway v. Bennett,* 29 Mich. 464; 18 Am. Rep. 107.)   The act is unconstitutional, in that it is special legislation, and in violation of subdivisions 10, 11, 25, 28, and 33 of section 25 of article IV. of the constitution. (See *People v. Cent. Pac. R. R. Co.,* 83 Cal. 393–411.)   Considering the districts as municipal corporations, the act is an unconstitutional delegation of the power of the legislature.   (See Cooley on Taxation, 449; *Shumway v. Bennett,* 29 Mich. 464; 18 Am. Rep. 107.)   The act is in violation of section 5, article XI., of the constitution of California, as the first section of the act provides for a petition to the board of supervisors of the county in which the land, "or the greatest portion thereof," is situated. (See Const., art. XI., sec. 5.)   The nature of a law, whether it is general or special, is to be tested by what may be done under it.   If when acted on its effects are special and peculiar, it is a special law. (*Moulton v. Parks,* 64 Cal. 167.)   The act is invalid because it exacts from the tax-payer more than the cost of the improvement.   (*Schumacker v. Toberman,* 56 Cal. 512.)   The irrigation districts under the act are not public or municipal corporations, as they subserve no public purpose whatever, but are purely business corporations. A public or municipal corporation is a body politic organized for the purpose of local government subsidiary to that of the state.   (15 Am. & Eng. Ency. of Law, 952.) If they are strictly private corporations, if corporations at all, they are invalid, as not being formed under general laws, and because it is provided that the legislature shall not delegate to any private corporation the power to levy taxes or assessments. (Const., art. XI., sec. 13.)   The fact that this court has decided the law to be valid is no reason for its adherence to the decision, as the former decisions are all based on the decision of *Dean v. Davis,* 51 Cal. 406, where it was held that they were public corporations, and valid, on the ground that the legislature had power to compel local improvements to promote the health of the people and advance the pub-

lic good; but no such results would flow from the Wright Act. The doctrine of *stare decisis* does not therefore apply. (*Hart* v. *Burnett*, 15 Cal. 607; *People* v. *Lynch*, 51 Cal. 39; 21 Am. Rep. 677.) It may be safely predicted that the enforcement of the act will be followed by results no less disastrous than those which have attended the operation of kindred acts. (See *Kean* v. *Driggs Drainage Co.*, 45 N. J. L. 96; Cooley's Constitutional Limitations, 3d ed., 214 et seq.) The law of 1889 is invalid, as it is in violation of subdivision 3 of section 25 of article IV. of the constitution, prohibiting the legislature from passing special laws regulating the practice of courts of justice. (*People* v. *C. P. R. R. Co.*, 83 Cal. 343.) It was assumed by the court in *Crall* v. *Poso Irrigation District*, 87 Cal. 140, and in the Modesto case, that the proceedings contemplated by the act of 1889 were proceedings *in rem;* but they do not come within any definition of a proceeding *in rem*. (Waples on Proceedings in Rem, secs. 1, 42, 43.) The judgment is on its face a judgment *in personam*, and is an attempted estoppel against all who did not appear, settling the validity of bonds to be issued. But there can be no action brought before a cause of action arises, and no personal judgment against a man, until he is personally served and has had his day in court. (*Webster* v. *Reid*, 11 How. 436–459; *Pana* v. *Bowler*, 107 U. S. 529; *Belcher* v. *Chambers*, 53 Cal. 639; *Pennoyer* v. *Neff*, 95 U. S. 722; *Denny* v. *Ashley*, 12 Col. 165.) A town is included in the Madera Irrigation District, which invalidates the district, as there cannot be at the same time within the same territory two distinct corporations exercising the same powers, jurisdictions, and privileges. (Dillon on Municipal Corporations, 166; 15 Am. & Eng. Ency. of Law, 1007.) The petition contains no sufficient description of the boundaries of the proposed district. (*Ralston* v. *Board of Supervisors*, 51 Cal. 592; *Keane* v. *Cannovan*, 21 Cal. 302; 82 Am. Dec. 738; Blackwell on Tax Titles, 152; *People* v. *Mahoney*, 55 Cal. 286.) The petition, a necessary part of the record of the proceeding, was the first step in a special proceeding. A compliance

of its averments and statements with the statute was a condition precedent to the exercise of the limited statutory power by the supervisors and other officers. Where the law requires jurisdictional conditions to appear in the record of an inferior board or tribunal, they must appear in the record. (*Latham* v. *Edgerton*, 9 Cow. 229; *White* v. *Hawn*, 5 Johns. 350.) If the law requires a petition showing certain facts, and the petition does not state facts as required, the board, officers, or tribunal has no jurisdiction, and its attempted action is void. (*People* v. *Spencer*, 55 N. Y. 1; *People* v. *Smith*, 55 N. Y. 135; *Harrington* v. *People*, 6 Barb. 607; *Jolley* v. *Foltz*, 34 Cal. 321; *Levy* v. *Superior Court*, 66 Cal. 192; 56 Am. Rep. 100; *Craig* v. *Town of Andes*, 93 N. Y. 405; *Litchfield* v. *Vernon*, 41 N. Y. 135; *Pittsburg* v. *Walter*, 69 Pa. St. 365; *Damp* v. *Town of Dane*, 29 Wis. 426.) No evidence was given in the trial court that the petition to the board of supervisors was signed by "fifty or a majority of the freeholders within the proposed district," or of any fact a prerequisite to the exercise of statutory powers by the supervisors. No intendments or presumptions will be made in favor of the authority or jurisdiction of inferior courts or officers proceeding under statutory powers, but every fact necessary to justify the exercise of the jurisdiction or authority must be proved. (*People* v. *Recorder*, 6 Hill, 429; *Hill* v. *Stocking*, 6 Hill, 314; *Doughty* v. *Hope*, 1 N. Y. 79; *Kennedy* v. *Newman*, 1 Sand. 187; *Bennett* v. *New York*, 1 Sand. 485; *Bailey* v. *Delaplaine*, 1 Sand. 11; *Varick* v. *Tallman*, 2 Barb. 113; *Dyke* v. *Lewis*, 2 Barb. 344; *Fulton* v. *Heaton*, 1 Barb. 552; *Sharp* v. *Speir*, 4 Hill, 76; *Matter of Faulkner*, 4 Hill, 598; *Ex parte Robinson*, 21 Wend. 672; *Ex parte Haynes*, 18 Wend. 611; *Dyckman* v. *New York*, 5 N. Y. 431; *Wooster* v. *Parsons*, 1 Kirby, 37; *Maples* v. *Wightman*, 4 Conn. 376; 10 Am. Dec. 149.) The orders or records of the board of supervisors or other alleged officers were not *prima facie* evidence that the petition was signed by fifty or a majority of the freeholders, as required by the act of 1887. (*Sharp* v. *Speir*, 4 Hill, 76; Blackwell on Tax Titles, 39; *Keane* v. *Cannovan*,

12 Cal. 299; 82 Am. Dec. 738; *Williams* v. *Peyton's Lessee*, 4 Wheat. 78; *Varick* v. *Tallman*, 2 Barb. 113; *Los Angeles* v. *L. A. W. W.*, 49 Cal. 642.) All statutory modes of divesting titles must be strictly pursued. He who relies upon an extraordinary mode of acquisition given him, not by the will of the owner, express or implied, but against his will, and by mandate of the law, must show a strict compliance with the statutory rules from which his title accrues. (*Curran* v. *Shattuck*, 24 Cal. 427; *Stanford* v. *Worn*, 27 Cal. 171; *City of Stockton* v. *Whitmore*, 50 Cal. 554; *Chicago and Alton R'y Co.* v. *Smith*, 78 Ill. 97; *Mitchell* v. *R'y Co.*, 68 Ill. 288; *Chicago* v. *R'y Co.*, 20 Ill. 290; *Wells on Jurisdiction*, 155.) The plaintiffs failed to prove their case, and a new trial should have been granted. (*Sharp* v. *Speir*, 4 Hill, 87; *Litchfield* v. *Vernon*, 41 N. Y. 135; *Pittsburg* v. *Walter*, 69 Pa. St. 365.) It was for the plaintiffs to prove a compliance with the act of 1887 from the beginning, as in all such cases it is for the plaintiffs to prove that the events had occurred which authorized officers clothed with conditional powers to exercise them. (*Damp* v. *Town of Dane*, 29 Wis. 426; *Litchfield* v. *Vernon*, 41 N. Y. 135.)

*C. C. Wright, Hinds & Merriam*, and *Craig & Meredith*, for Respondents.

The board of supervisors had the power, and it was their duty, under the statute of 1887, to determine that the petition for the formation of a district was signed by the required number of freeholders, and they did so decide, and their decision was conclusive. (*Modesto Irrigation Dist.* v. *Tregea*, 88 Cal. 334; *Humboldt County* v. *Dinsmore*, 75 Cal. 604; *Dean* v. *Davis*, 51 Cal. 406; *In re Grove Street*, 61 Cal. 438; *Butte Co.* v. *Boydston*, 11 Pac. Rep. 781; *Lent* v. *Tillson*, 72 Cal. 422; *People* v. *Hagar*, 52 Cal. 171.) It is a well-settled principle that where the jurisdiction of an inferior court or board depends upon a fact which such court or board is required to ascertain and settle by its decision, such decision is conclusive. (*Levy* v. *Superior Court*, 66 Cal. 293; *Golden Gate* v.

*Superior Court*, 65 Cal. 189; *Muncey* v. *Joest*, 74 Ind. 409; *Ryan* v. *Varga*, 37 Iowa, 79; *Vosburgh* v. *Welch*, 11 Johns. 175; *Staples* v. *Fairchild*, 3 N. Y. 41.) The contention that because the statute of 1887 does not in express terms authorize the board of supervisors to decide the question as to whether the petition was signed by the requisite number of freeholders, their decision is merely a ministerial act, not binding upon any one, is not supported by any authority. (*Lent* v. *Tillson*, 72 Cal. 422; *Knox County* v. *Nichols*, 14 Ohio St. 271; *Seanson* v. *Duryea*, 10 Barb. 523; *King* v. *Paul*, 36 Barb. 242; *Matter of Arnold*, 60 N. Y. 26; *Cook* v. *South Park Commissioners*, 61 Ill. 115; *Gage* v. *Parker*, 103 Ill. 528.) The bond accompanying the petition, though informal, was valid. (Murfree on Official Bonds, sec. 235; *Moss* v. *Wilson*, 40 Cal. 159; *Jessup* v. *United States*, 106 U. S. 146; *United States* v. *Tingey*, 5 Pet. 115; *United States* v. *Bradley*, 10 Pet. 343; *United States* v. *Hodson*, 10 Wall. 395; *United States* v. *Linn*, 15 Pet. 290.) Even if not valid, the giving of a bond under section 2 of the act of 1887 was not a jurisdictional requirement. (*Central Irrigation District* v. *De Lappe*, 79 Cal. 351.) The description of the boundary of the district was sufficient, as a description such as would be sufficient in a deed between private parties is sufficient to satisfy the law. (*Central Irrigation District* v. *De Lappe*, 79 Cal. 351; *Wendell* v. *Jackson*, 8 Wend. 183; *Harry* v. *Graham*, 1 Dev. & B. 76; *De Rutte* v. *Muldrow*, 16 Cal. 514; *In re Inhabitants of Ipswich*, 13 Pick. 436; *Hamilton* v. *McNeil*, 13 Gratt. 389; *Raab* v. *State*, 7 Md. 483.) The appellants' points relating to the constitutionality of the Wright Act have all been disposed of by the supreme court adverse to the appellants. (*Turlock Irrigation District* v. *Williams*, 76 Cal. 360.) The constitutionality of the act of 1889 was exhaustively presented to the supreme court, and fully sustained in all points. (*Crall* v. *Poso Irrigation District*, 87 Cal. 140.)

HARRISON, J. — The board of directors of the Madera Irrigation District, on the 25th of May, 1889, filed in the

superior court of the county of Fresno, in pursuance of the act of March 16, 1889 (Stats. 1889, p. 212), a petition for the confirmation by that court of their proceedings for the issue and sale of certain bonds of said district, amounting to eight hundred and fifty thousand dollars. In their petition, they alleged that " said Madera Irrigation District was duly organized under the laws of the state of California, and especially under the provisions of the act approved March 7, 1887 " (Stats. 1887, p. 29), and set forth the various steps taken by them in reference to the issue and sale of the bonds, and prayed " that the proceedings aforesaid for the issue and sale of the bonds of said district may be examined, approved, and confirmed by said court, and for all and any legal and equitable relief which may be provided by law, and which the court shall deem meet." Notice was thereupon given by order of the court that the hearing of said petition would be had July 5, 1889; and prior to that day the appellants herein filed answers thereto, showing that they were owners of lands within the district to be affected by said bonds, and specifically denying the allegations in said petition. At the hearing upon the issues presented by the answers of the appellants, the court rendered its judgment in favor of the petitioners, and approved and confirmed " the legality and the validity of each and all of the proceedings for the organization of said Madera Irrigation District," and further adjudged and decreed that " each and all of the proceedings taken to secure and provide for and authorizing the issue and sale of bonds of said district in the sum of eight hundred and fifty thousand dollars, and affecting the legality and validity of said bonds, up to and including the resolutions and orders of the board of directors of said district, made March 13, 1889, authorizing the issuance and sale of said bonds, be and the same are hereby approved and confirmed." From this judgment an appeal has been taken directly upon the judgment roll, bringing here the proceedings at the trial of the issues by a bill of exceptions.

In presenting their appeal, the appellants have con-

tended that the act of March 7, 1887, under which the proceedings for the organization of the district were had, is unconstitutional, for the reason that it is in its nature beyond the power of the legislature to enact, and also by reason of the provisions therein contained for the organization of the district, and the mode provided for assessments upon the lands in said district with which to meet the bonds authorized by the act. It is also contended by them that at the hearing of the proceedings in the court below the petitioners did not establish by competent evidence that there had been such compliance with the requirements of the act as would constitute a district, or give any authority to provide for the issuance of the bonds in question, and that the evidence upon which the court made its findings was improperly admitted and considered by it.

The constitutionality of the act in question was passed upon by this court and affirmed in the case of *Turlock Irrigation District* v. *Williams*, 76 Cal. 360, and also in the case of *Central Irrigation District* v. *De Lappe*, 79 Cal. 351; but, inasmuch as counsel have made elaborate arguments herein in review of the conclusion reached in those cases, we have again examined the question in the light of these arguments, and in affirming those decisions we present the reasons upon which we again hold the act to be constitutional, more at length than was presented in the former opinions.

1. That the legislature is vested with the whole of the legislative power of the state, and that it has authority to deal with any subject within the scope of civil government, except in so far as it is restrained by the provisions of the constitution, and that it is the sole tribunal to determine as well the expediency as the details of all legislation within its power, are principles so familiar as hardly to need mention. The declaration in article IV., section 1, of the constitution: " The legislative power of this state shall be vested in a senate and assembly, which shall be designated the legislature of the state of California,"— comprehends the exercise of all the sov-

ereign authority of the state in matters which are properly the subject of legislation; and it is incumbent upon any one who will challenge an act of the legislature as being invalid to show, either that such act is without the province of legislation, or that the particular subject-matter of that act has been by the constitution, either by express provision or by necessary implication, withdrawn by the people from the consideration of the legislature. The presumption which attends every act of the legislature is, that it is within its power; and he who would except it from the power must point out the particular provision of the constitution by which the exception is made, or demonstrate that it is palpably excluded from any consideration whatever by that body.

In providing for the welfare of the state and its several parts, the legislature may pass laws affecting the people of the entire state, or when not restrained by constitutional provisions, affecting only limited portions of the state. It may make special laws relating only to special districts, or it may legislate directly upon local districts, or it may intrust such legislation to subordinate bodies of a public character. It may create municipal organizations or agencies within the several counties, or it may avail itself of the county or other municipal organizations for the purposes of such legislation, or it may create new districts embracing more than one county, or parts of several counties, and may delegate to such organizations a part of its legislative power to be exercised within the boundaries of said organized districts, and may vest them with certain powers of local legislation, in respect to which the parties interested may be supposed more competent to judge of their needs than the central authority. " The members of the two houses are the constitutional agents of the public will in every district or locality of the state; and they may therefore so arrange the powers to be given and executed therein as convenience, the efficiency of administration, and the public good may seem to require, by committing some functions to local jurisdictions already established, or by

establishing local jurisdictions for that express purpose."
(*People* v. *Salamon*, 51 Ill. 50.)   "If from exceptional
causes the public good requires that legislation, either
permanent or temporary, be directed towards any par-
ticular locality, whether consisting of one county or sev-
eral counties, it is within the discretion of the legislature
to apply such legislation as, in its judgment, the exigency
of the case may require, and it is the sole judge of the
existence of such causes.   The representatives of the
whole people convened in the two branches of the legis-
lature are subject to the exceptions which have been
mentioned, — the organs of the public will in every dis-
trict or locality of the state.   It follows that it falls to
the legislature to arrange and distribute the administra-
tive functions, committing such portions as it may deem
suitable to local jurisdictions, and retaining other por-
tions to be exercised by officers appointed by the central
power, and changing the arrangement from time to time,
as convenience, the efficacy of administration, and the
public good may seem to require."   (*People* v. *Draper*, 15
N. Y. 544.)

In providing for the public welfare, or in enacting laws
which, in the judgment of the legislature, may be ex-
pedient or necessary, that body must determine whether
or not the measure proposed is for some public purpose.
We do not mean by this that the declaration of the legis-
lature that an act proposed by it will be for the public
good will of necessity preclude an investigation therein,
or that such declaration will be conclusive when the act
itself is palpably otherwise.   (*Consolidated Channel Co.* v.
*Central Pac. R. R. Co.*, 51 Cal. 269.)   Acts may be passed
by that body which will, by their very terms or the na-
ture of their provisions, show that their purpose is pri-
vate, rather than public.   Such are the acts that were
involved in the cases of *Loan Association* v. *Topeka*, 20
Wall. 664; *Allan* v. *Inhabitants of Jay*, 60 Me. 124; 11
Am. Rep. 185; *Lowell* v. *City of Boston*, 111 Mass. 454;
15 Am. Rep. 39; *State* v. *Osawkee*, 14 Kan. 419; 19 Am.
Rep. 99; *People* v. *Parks*, 58 Cal. 624.   But if the subject-

matter of the legislation be of such a nature that there is any doubt of its character, or if by any possibility the legislation may be for the welfare of the public, the will of the legislature must prevail over the doubts of the court. (*Stockton etc. R. R. Co.* v. *City of Stockton,* 41 Cal. 147.) It may be more difficult to define in advance the line of separation between a purpose which is private and one which is public, than to determine whether in the individual case the act is for a public or a private purpose; and, as was said by Mr. Justice Miller in *Davidson* v. *New Orleans,* 96 U. S. 104, it is wiser to proceed "by the gradual process of judicial inclusion and exclusion, as the cases presented for decision shall require." Whenever it is apparent from the scope of the act that its object is for the benefit of the public, and that the means by which the benefit is to be attained are of a public character, the act will be upheld, even though incidental advantages may accrue to individuals beyond those enjoyed by the general public. We have recently held that an appropriation by the legislature of three hundred thousand dollars for the World's Fair Columbian Exposition at Chicago is to be sustained as a legitimate appropriation of the public moneys of the state, upon the ground that it is one of the objects of government to promote the public welfare of the state, and to provide for the material prosperity of its people, and that it is for the legislature to determine the manner and the extent to which it will exercise this function of government, and that its determination upon that point is limited by its own discretion, and beyond the interference of courts. The same rules of construction must be applied to the exercise of legislative authority in authorizing an expenditure for a local improvement. Such authorization is a legislative declaration that the expenditure is for a public purpose, and for the welfare of the public, and its action is not to be disregarded by the courts upon an assumption by them that such legislation is unwise, or that it may be injurious to some of the individuals who are affected by it.

In determining whether any particular measure is for the public advantage, it is not necessary to show that the entire body of the state is directly affected thereby, but it is sufficient that that portion of the state within the district provided for by the act shall be benefited thereby. The state is made up of its parts, and those parts have such a reciprocal influence upon each other that any advantage which accrues to one of them is felt more or less by all of the others. A legislature that should refrain from all legislation that did not equally affect all parts of the state would signally fail in providing for the welfare of the public. In a state as diversified in character as in California, it is impossible that the same legislation should be applicable to each of its parts. Different provisions are as essential for those portions whose physical characteristics are different, as are needed in the provisions which are made for the government of town and country. Those portions of the state which are subject to overflow, and those which require drainage, as well as those which for the purpose of development require irrigation, fall equally within the purview of the legislature and its authority to legislate for the benefit of the entire state or for the individual district.

The power of the legislature to adapt its laws to the peculiar wants of each of these districts rests upon the same principle, viz., that it is acting for the public good, in its capacity as the representative of the entire state. Under this principle, levee districts have been organized directly by the legislature itself, and their organization has been authorized by the legislature through the board of supervisors of the county in which the district is situated. (Stats. 1867–68, p. 316.) Such legislation was upheld in *Dean* v. *Davis*, 51 Cal. 406. Under the same principle, reclamation districts have been organized, and their creation upheld as a legitimate exercise of legislative power. In passing upon this question in *Hagar* v. *Board of Supervisors of Yolo County*, 47 Cal. 233, the supreme court said: "The power of the legislature to compel local improvements which, in its judgment, will

promote the health of the people and advance the public good is unquestionable. In the exercise of this power, it may abate nuisances, construct and repair highways, open canals for irrigating arid districts, and perform many other similar acts for the public good, and all at the expense of those who are to be chiefly and more immediately benefited by the improvement"; and in answer to the suggestion that such was merely a local improvement, the court said: "But we need not rest our decision on the narrow ground that this is strictly a local improvement; on the contrary, the reclamation of the vast bodies of swamp and overflowed land in this state may justly be regarded as a public improvement of great magnitude and of the utmost importance to the community. If left wholly to individual enterprise, it probably would never be accomplished; and in inaugurating so great a work the legislature has pursued substantially the same system adopted in other states for the reclamation of similar lands, to wit, by dividing the territory to be reclaimed into districts, and assessing the cost of the improvement on the lands to be benefited"; and refer, in support of the opinion, to the acts of different states in which similar improvements had been authorized.

The reasons given in that case are fully as potent in support of the authority exercised in the matter of an irrigation district; and, notwithstanding it is urged by counsel for appellants that the authority for reclaiming overflowed lands is to be upheld only as a sanitary measure, it will be seen that that is not the only ground upon which the court based its decision. Nor do we think that it rests upon that ground alone. In our opinion, a more liberal construction should be given to the authority under which such a district is established. Certainly, these grounds are not the basis of the authority for the creation of a levee district; that rests, not upon any sanitary ground, but upon the ground of protection to the parties who would be affected by the overflow. (*Williams* v. *Cammack*, 27 Miss. 222; 61 Am. Dec. 508; *Wallace* v.

*Shelton,* 14 La. Ann. 498.)   Upon this subject, Mr. Cooley says: " But where any considerable tract of land owned by different persons is in a condition precluding cultivation by reason of excessive moisture which drains would relieve, it may. well be said that the public have such an interest in the improvement and the consequent advancement of the general interest of the locality as will justify the levy of assessments upon the owners for drainage purposes.   Such a case would seem to stand upon the same solid ground with assessments for levee purposes which have for their object to protect lands from falling into a like condition of uselessness."   (Cooley on Taxation, 617.)

We have not been cited to the statute of any other state which provides for irrigating arid lands, or to any authority in which the power of the legislature over the subject is discussed, but we have no hesitation in saying that the principles upon which the decisions to which we have referred were made are applicable to sustain the legislative authority in making provision for such irrigation.   Whether the reclamation of the land be from excessive moisture to a condition suitable for cultivation, or from excessive aridity to the same condition, the right of the legislature to authorize such reclamation must be upheld upon the same principle, viz., the welfare of the public, and particularly of that portion of the public within the district affected by the means adopted for such reclamation.   Whatever tends to an increased prosperity of one portion of the state, or to promote its material development, is for the advantage of the entire state; and the right of the legislature to make provision for developing the productive capacity of the state, or for increasing facilities for the cultivation of its soil according to the requirements of the different portions thereof, is upheld by its power to act for the benefit of the people in affording them the right of "acquiring, possessing, and protecting the property " which is guaranteed to them by the constitution.   The local improvement contemplated by such legislation is for the benefit

and general welfare of all persons interested in the lands within the district, and is a local public improvement. This principle is not contravened by the fact that it may even operate injuriously upon some of the individuals or proprietors of land within the district, or by the fact that there may be some who for personal motives may wish to resist the improvement. Such result is only a sacrifice which the individual makes to the general good in compensation for the advantages enjoyed by virtue of the social compact. All laws of this character are upheld upon the same principle as is the creation of a district for the purpose of any other local improvement, such as the opening of a highway, or of a street, or of a public park. The legislature, to which has been confided the matter, has determined that it will be for the public good that such street or park be opened, and it has imposed the burden of such opening upon the property within a limited district. In each of such instances the land taxed for the improvement may not be the only land that will be benefited. Although land adjacent to the district may be incidentally benefited, that is no reason for taxing such land, nor is it any objection to the proceeding that some of the property within the district will not receive any benefit, or that the improvement will more specifically benefit those who have procured its creation.

" It has never been deemed essential that the entire community, or any considerable portion of it, should directly enjoy or participate in an improvement or enterprise, in order to constitute a public use, within the meaning of these words as used in the constitution. Such an interpretation would greatly narrow and cripple the authority of the legislature, so as to deprive it of the power of exerting a material and beneficial influence on the welfare and prosperity of the state. In a broad and comprehensive view, such as has been heretofore taken of the construction of this clause of the declaration of rights, everything which tends to enlarge the resources, increase the industrial energies, and promote

the productive power of any considerable number of the inhabitants of a section of the state, or which leads to the growth of towns and the creation of new sources for the employment of private capital and labor, indirectly contributes to the general welfare and to the prosperity of the whole community." (*Talbot* v. *Hudson*, 16 Gray, 425.)

The means by which the legislature may exercise this power is left to its own discretion, except as it may be limited by the constitution. If, in the exercise of its care for the public welfare, it finds that a specific district of the state needs legislation that is inapplicable to other parts of the state, it may, in the absence of constitutional restrictions, legislate directly for that district, or if it be the case that similar legislation be required for other portions of the state, it may provide for adapting such legislation to those portions, at the will of the people in such districts, as was done in the reclamation and levee laws already referred to. It may, too, by general laws, authorize the inhabitants of any district, under such restrictions, and with such preliminary steps as it may deem proper, to organize themselves into a public corporation, for the purpose of exercising those governmental duties, upon the same principle as it authorizes the incorporation of any municipal corporation under general laws.

The constitution of California has been framed with the principle of investing separate subdivisions of the state with local government, and especially authorizes the legislature to confer the power of local legislation upon such subdivisions within the state as may be organized under its authority. The legislature is itself forbidden to interfere in any manner, except by general laws, with the power of local legislation intrusted to such organizations, nor can it delegate to any but public corporations the power to perform any municipal functions whatever, or vest in any but the corporate authority of a municipal corporation the power to assess and collect taxes for any municipal purpose. But although the

legislature is prevented from passing any special or local law which shall be applicable to only a particular portion or district of the state, its power of legislation for the public good in that portion of the state has not been destroyed. It still retains the full power of legislation conferred upon it in the constitution, but is required to exercise such power in the mode prescribed in that instrument. It may pass general laws which, from their nature, will be capable of enforcement in only particular portions of the state; or it may by other general laws authorize the organization of municipal corporations which, from the nature of the functions intrusted to them, can find occasion for organization only in certain portions of the state; and it may by such general laws provide for the organization of such and as many species of municipal corporations as, in its judgment, are demanded by the welfare of the state, and the "protection, security, and benefit of the people," for which government is instituted, and which has been by the people confided to it. (Const., art. I., sec. 2.)

The provision in article XI., section 6, of the constitution, "Corporations for municipal purposes shall not be created by special laws," does not imply that the legislature must by any general law provide a plan in which shall be prescribed the mode under which all municipal corporations must be organized, and the powers that they can exercise. The provision in article XII., section 1, that private corporations "may be formed under general laws, but shall not be created by special act," although more explicit, and, under the declaration of the constitution itself, article I., section 22, "mandatory," rather than permissive, requiring that they *must* be formed under general laws, has never been construed as requiring that all private corporations must be formed under the same general law, or limited to the exercise of the same powers. On the contrary, the form of organization, as well as the powers to be exercised, have been by legislation adapted to the character of the corporation to be organized. All corporations of the same class are required to

be organized in the same manner, but the nature of the organization does not permit, nor does the constitution require, that corporations of different classes shall be organized in the same manner, or provided with the same powers.   Hence the provisions that have been made by the legislature for the organization and powers of railroad, insurance, religious, mining, and other business corporations have been adapted to their respective character and needs.   With greater propriety has it been left to the legislature to provide the mode of organization and the powers to be exercised by different species of municipal corporations.   Such corporations are but the agents or representatives of the state in the particular locality in which they exist.   They are organized for the purpose of carrying out the purposes of the legislature in its desire to provide for the general welfare of the state, and in the accomplishment of which legislative convenience or constitutional requirements have made them essential.   Although in this state the legislature is required to provide such agencies under general laws, it is authorized, under its general power of legislation, to invest such corporations, when created, with the same powers which, without such restriction, it could itself have exercised; and in providing for such organizations it need confer upon them only such powers, as in its judgment, are proper to be exercised by them in the discharge of the particular functions of government which may be conferred upon them.   Being the representatives of the legislature in the various localities of the state, the requirements for organization, as well as the powers to be exercised, vary with the character of the purpose for which they may be created.   Hence the general laws which the legislature may enact for the organization of public corporations may be as numerous as the objects for which such corporations may be created.   For each of these objects the law is the same, but there would be a manifest impropriety in requiring that the organization of a levee district or an irrigation district should be conducted in the same manner as the organization of a

corporation for the management of a public park or the control of the school department. Whether the districts to which such general laws are applicable, or in which the people thereof may avail themselves of the privilege conferred, be many or few, is immaterial. Even if there be but a single district to which the law is applicable at the time of its enactment, the legislature would be justified, under its legislative power, to pass general laws in making such provision for that district. Whenever a special district of the state requires special legislation therefor, it is competent for the legislature, by general law, to authorize the organization of such district into a public corporation, with such powers of government as it may choose to confer upon it. It is not necessary that such public corporation should be vested with all governmental powers, but the legislature may clothe it with such as, in its judgment, are proper to be exercised within and for the benefit of such district. Being created for the purpose of discharging only one public purpose, it is not requisite that it have power not necessary therefor, or which would be appropriate to a corporation organized for some other purpose. Neither is it requisite that such corporation should have legislative or judicial powers conferred upon it. It may be organized for the mere purpose of exercising executive and administrative functions, with the added power of making such prudential rules and regulations as may be necessary for the exercise of the particular functions intrusted to its charge. The powers committed to a public corporation organized for the administration of a public park, or for the government of a levee district, or for the control of the police department, need be only such as are peculiarly appropriate to such organizations.

It is contended that the act is unconstitutional, for the reason that it is a delegation of the legislative power to create a corporation. If by this is meant that only the legislature can create such corporation, the answer is, that the constitution prohibits such action. If it is meant that because the corporation is not "created"

until the voters of the district have accepted the terms of the act, the answer is, that such proceeding is in direct accord with the principles of the constitution. Having the power to create municipal corporations, but being prohibited from creating them by special laws, the only mode in which such corporations could be created under a general law would be by some act on the part of the district or community seeking incorporation indicative of its determination to accept its terms. As the constitution has not limited or prescribed the character of such general law, its character and details are within the discretionary power of the legislature. We know of no more appropriate mode of such indication than the affirmative vote of those who are to be affected by the acceptance of the terms of the act.

The municipal corporations which may be thus created are not limited to cities and towns. The constitution makes provision in various places for municipal corporations, other than cities and towns. (Art. XI., secs. 9, 10, 12, 16.) In each of these sections provision is made with reference to the government or officers of "county, city, town, or other public or municipal corporation," thus clearly indicating that there may be municipal corporations other than those of a town or city, and consequently that the provisions with reference to the incorporation of cities and towns found in section 6 of the same article are not controlling in the organization of other municipal corporations, and that while the constitution carefully provides for the "incorporation, organization, and classification" of cities and towns, it makes no similar provision for other municipal corporations, but very properly leaves such action to the discretion of the legislature. Inasmuch as there is no restriction upon the power of the legislature to authorize the formation of such corporations for any public purpose whatever, and as when organized they are but mere agencies of the state in local government, without any powers except such as the legislature may confer upon them, and are at all times subject to a revocation of

such power, it was evidently the purpose of the framers of the constitution to leave in the hands of the legislature full discretion in reference to their organization.

In the present case the legislature has chosen to authorize the creation of a public corporation in the manner and with the forms specified in the act under discussion. For this purpose it has provided that a petition of fifty freeholders, or a majority of the freeholders, owning lands within a proposed district susceptible of one mode of irrigation, shall be presented to the board of supervisors of the county within which such lands are situate, and that the board of supervisors shall, upon the hearing of such petition, after notice thereof, determine whether or not it will take steps to organize an irrigation district, and that upon such determination an election shall be ordered, at which, if two thirds of the electors within the district shall vote in favor of such organization, the district shall thereupon be organized, and its management confided to a board of directors chosen by the electors of that district. It is objected to this, that it is placing in the hands of those not interested the power of imposing a burden upon the owners of the land, who may be a small minority of the electors within that district, or who may even be non-residents of the district. This, however, is a matter which was addressed purely to the discretion of the legislature. Whether such a petition should be made by the owners of a fixed proportion of the land, as was required in the reclamation law, or whether there should be any qualification to the petitioners, or whether there should be any limit to the expenses which they were authorized to incur for the purposes of the improvement, are questions which were solely for the consideration of the legislature. It is not for this department of the government to question the policy or the prudence of a co-ordinate branch. If those who are affected by its proceedings feel that it has not given them sufficient protection, or placed sufficient safeguards around the institution of the corporation, they must

seek redress from that body.   We can only act upon the law as it has been enacted.   It must be observed, however, that this petition has no binding operation, but is merely the initiatory step which gives to the board of supervisors a jurisdiction to act upon the expediency or policy of authorizing the creation of the district.   That body is the representative of the county, and has been chosen by its electors for the express purpose of legislation upon local subjects, and may naturally be supposed to have the interests of the entire county, as well as of each of its parts, in charge, and to be acquainted with its needs and requirements.   The legislature has not, however, intrusted that body with the final determination of the question, but has authorized it to submit the question to a vote of the electors of the district, and it is only when these electors have determined by a vote of two thirds of their number in favor thereof that the district can be created as a political body.   The objection that this vote may be carried by a majority of those who have no interest in the lands affected thereby is but an incident, and not of the essence of the matter.   It is no more than exists in every popular vote which involves the creation of a municipal debt or the adoption of a municipal organization.   The fact that the owners of the lands are non-residents within the district, and not allowed a voice in the proceedings, is of the same character.   Property qualification for voting, either in amount or character, is expressly forbidden by article I., section 24, of the constitution, which declares: "No property qualification shall ever be required for any person to vote or hold office"; and however much non-residents may be affected by the acts and vote of the community, only those who are inhabitants of the dis-- trict can, by the constitution, be permitted to vote at any election.   (Art. II., sec. 1.)

That an irrigation district organized under the act in question becomes a public corporation is evident from an examination of the mode of its organization, the purpose for which it is organized, and the powers conferred

XCII. Cal.—21

upon it. It can be organized only at the instance of the board of supervisors of the county,— the legislative body of one of the constitutional subdivisions of the state; its organization can be effected only upon the vote of the qualified electors within its boundaries; its officers are chosen under the sanction and with the formalities required at all public elections in the state, — the officers of such election being required to act under the sanction of an oath, and being authorized to administer oaths when required, for the purpose of conducting the election; and the officers, when elected, being required to execute official bonds to the state of California, approved by a judge of the superior court. The district officers thus become public officers of the state. When organized, the district can acquire, either by purchase or condemnation, all property necessary for the construction of its works, and may construct thereon canals and other irrigation improvements, and all the property so acquired is to be held by the district in trust, and is dedicated for the use and purposes set forth in the act, and is declared to be a public use, subject to the regulation and control of the state. For the purpose of meeting the cost of acquiring this property, the district is authorized, upon the vote of a majority of its electors, to issue its bonds, and these bonds and the interest thereon are to be paid by revenues derived under the power of taxation, and for which all the real property in the district is to be assessed. Under this power of taxation, — one of the highest attributes of sovereignty, — the title of the delinquent owner to the real estate assessed may be divested by sale, and power is conferred upon the board of directors to establish equitable by-laws, rules, and regulations for the distribution and use of water among the owners of said lands, and generally to perform all such acts as shall be necessary to fully carry out the purpose of the act. Here are found the essential elements of a public corporation, none of which pertain to a private corporation. The property held by the corporation is in trust for the public, and subject to the control of

the state.   Its officers are public officers, chosen by the electors of the district, and invested with public duties. Its object is for the good of the public, and to promote the prosperity and welfare of the public.  " Where a corporation is composed exclusively of officers of the government, having no personal interest in it, or with its concerns, and only acting as organs of the state in effecting a great public improvement, it is a public corporation."   (Angell and Ames on Corporations, sec. 32.) " A municipal corporation proper is created mainly for the interest, advantage, and convenience of the locality and of its people.   The primary idea is an agency to regulate and administer the interior concerns of the locality in matters peculiar to the place incorporated, and not common to the state or people at large."   (15 Am. & Eng. Ency. of Law, 954.)  " Public corporations are such as are created for the discharge of public duties in the administration of civil government."   (Lawson's Rights and Remedies, sec. 332.)

The constitutionality of the act in question is further assailed upon the ground that it makes no provision for a hearing from the owners of the land prior to the organization of the district.   But the steps provided for the organization of the district are only for the creation of a public corporation to be invested with certain political duties which it is to exercise in behalf of the state. (*Dean* v. *Davis*, 51 Cal. 406.)   It has never been held that the inhabitants of a district are entitled to notice and hearing upon a proposition to submit such question to a popular vote.   In the absence of constitutional restriction, it would be competent for the legislature to create such public corporation, even against the will of the inhabitants.   It has as much power to create the district in accordance with the will of a majority of such inhabitants.   It must be observed that such proceeding does not affect the property of any one within the district, and that he is not by virtue thereof deprived of any property.   Such result does not arise until after delinquency on his part in the payment of an assessment

that may be levied upon his property, and before that time he has opportunity to be heard as to the correctness of the valuation which is placed upon his property, and made the basis of his assessment. He does not, it is true, have any opportunity to be heard, otherwise than by his vote in determining the amount of bonds to be issued, or the rate of assessment with which they are to be paid; but in this particular he is in the same condition as is the inhabitant of any municipal organization which incurs a bonded indebtedness, or levies a tax for its payment. His property is not taken from him without due process of law, if he is allowed a hearing at any time before the lien of the assessment thereon becomes final. (*People* v. *Smith*, 21 N. Y. 595; *Gilmore* v. *Hentig*, 33 Kan. 170; *Hagar* v. *Rec. Dist. No. 108*, 111 U. S. 701; *Davies* v. *Los Angeles*, 86 Cal. 46.)

It is also objected that the mode provided for the payment of the bonds is unconstitutional, in that it provides for an assessment upon the real property within the district according to its value, and not according to the benefit which each particular parcel of land may derive from the improvement.

The power of the legislature in matters of taxation is unlimited, except as restricted by constitutional provisions. This is one of the attributes of sovereignty which the people have placed in its hands; and they have intrusted its exercise to its discretion, either in the manner or to the extent to which it is to be applied. All taxation has its source in the necessities of organized society, and is limited by such necessity, and can be exercised only by some demand for the public use or welfare. And whether the tax be by direct imposition for revenue, or by assessment for a local improvement, it is based upon the theory that it is in return for the benefit received by the person who pays the tax, or by the property which is assessed. For the purpose of apportioning this benefit, the legislature may determine in advance what property will be benefited, by designating the district within which it is to be collected, as well as the

property upon which it is to be imposed, or it may appoint a commission or delegate to a subordinate agency the power to ascertain the extent of this benefit. It may itself declare that the entire state is benefited, and authorize the burden to be borne by a public tax, or it may declare that all or a portion of the property within a limited region is benefited, either according to its value or in proportion to its actual benefit, to be specifically ascertained by actual determination of officers appointed therefor. Upon the power of the legislature over the subject of taxation, as well as the modes in which and the objects upon which it may be exercised, we know of nothing that has been written in any opinion since that of Judge Ruggles in *People* v. *Brooklyn*, 4 N. Y. 419, 55 Am. Dec. 266, which is not either an amplification of the views therein expressed, or an adaptation of them to the particular subject under discussion. In the exhaustive opinion of Mr. Justice Sawyer in *Emery* v. *San Francisco Gas Co.*, 28 Cal. 345, the principles declared in that opinion were applied to the case then before the court, wherein this power of taxation was shown to be the foundation for upholding the right of assessment in a manner different from the *ad valorem* principle. The controversy upon this subject has almost invariably been against the "front-foot" rule, and in favor of the *ad valorem* principle, and in nearly every state, unless it be New Jersey, the principle has been maintained that it is within the power of the legislature to adopt whichever rule it may select. In *Burnett* v. *Sacramento*, 12 Cal. 76, 73 Am. Dec. 518, the charter of Sacramento provided that the expense of a local improvement should be assessed upon the adjacent property according to its value, and upon this point the supreme court, speaking through Judge Field, said: " The law in question avoids the injustice of general taxation for local purposes, and lays the burden upon the recipients of the benefit. It apportions the tax according to the assessed cash value of the adjacent property, which is as near an approximation to an equitable rule as can well be established. No rule

could be adopted which would work absolute equality. An approximation to it is all that can be attained. The power of apportionment, like the power of taxation, is exclusively in the legislature. The constitution contains no inhibition to the tax, and prescribes no rule of apportionment. Security against the abuse of the power rests in the wisdom and justice of the members of the legislature and their responsibility to their constituents." Assessments for local improvements according to the value of the property assessed have been upheld in *Downer* v. *Boston*, 7 Cush. 277; *Snow* v. *Fitchburg*, 136 Mass. 183; *Gilmore* v. *Hentig*, 33 Kan. 174; *Strowbridge* v. *Portland*, 8 Or. 82; *Creighton* v. *Scott*, 14 Ohio St. 438; *Lockwood* v. *St. Louis*, 24 Mo. 20.

It is, however, for the legislature to determine how the apportionment shall be made, and while it is held that an apportionment of the expenses for a local improvement is to be made according to the benefits received by the property assessed, yet the power to make such apportionment rests upon the general power of taxation, and the apportionment itself does not depend upon the fact of local benefit in any other sense than that all taxes are supposed to be based upon the benefit received by the tax-payer. As was said by Mr. Justice Temple in *Lent* v. *Tillson*, 72 Cal. 428: "The main practical difference between assessment for a local improvement and general taxation seems to be, that in general taxation it is difficult and generally impossible for the court to say that the purpose of the tax is not a public purpose, or that no benefit will result to the tax-payers, while in local assessments it is more often easy to see that the improvement will not be a special benefit. Still, the benefit is not the source of the power. That is inherent in the government, and is only limited by express or implied limitations found in the constitution, or by its own nature and purposes. Within these limits the legislature is the sole judge of when and to what extent the power shall be used." And again: "The power being in the legislature, the limitations upon it must be found in the

constitution, either in express provisions or by implication, and there exists the same presumption that the law is within legislative power that applies to any other statute; that is, the law will not be declared unconstitutional unless it plainly appears to be so." (Page 430.) Mr. Cooley says, in his treatise on Taxation (p. 622): "The power to determine when a special assessment shall be made, and on what basis it shall be apportioned, is wisely confided to the legislature, and could not, without the introduction of some new principle in representative government, be placed elsewhere." And in *Hagar* v. *Supervisors*, 47 Cal. 234, the court said: "It is equally clear that those clauses which provide that taxation shall be equal and uniform throughout the state, and which prescribe the mode of assessment, and the persons by whom it shall be made, and that all property shall be taxed, have no application to assessments levied for local improvements." In accordance with this principle, various modes of apportionment for the expenses of local improvements have been upheld. We have already seen that they have been upheld when made in accordance with the value of the property, as well as when made in proportion to the frontage of the lots. The legislature has also itself designated the district which will be benefited by the improvement, as was done in the Dupont Street improvement act, (Stats. 1875–76, p. 433), and as has been provided in the general act for street improvements, where the entire frontage of the block is the district upon which the assessment is to be made. (*Diggins* v. *Brown*, 76 Cal. 318.) Assessments have also been upheld when made by commissioners appointed to make specific assessments upon the several parcels of land (*Pacific Bridge Co.* v. *Kirkham*, 64 Cal. 519); or when made according to the area of the land affected by the improvement. (*Keese* v. *City of Denver*, 10 Col. 123.) The legislature has itself levied a specific tax upon each acre of land within a district created by itself (*Levee Co.* v. *Hardin*, 27 Mo. 495; 72 Am. Dec. 276; *Williams* v. *Cammack*, 27 Miss. 209; 61 Am. Dec. 508; *Alcorn* v. *Hamer*,

38 Miss. 652); and has authorized such tax to be levied by the district (*Wallace* v. *Shelton*, 14 La. Ann. 498); and has authorized a fixed uniform rate for each sewer upon the estimated cost of all the sewers within the district. (*Leominster* v. *Conant*, 139 Mass. 384.)

It is not necessary to show that property within the district may be actually benefited by the local improvement, and, even if it positively appear that no benefit is received, such property is not thereby exempted from bearing its portion of the assessment, nor is the act unconstitutional because it provides that such property shall be assessed. Property that is exempt from taxation has always been held subject to the burdens of assessment for local improvements, and property within a district that is not susceptible of receiving any immediate benefit from the improvement is nevertheless so indirectly benefited thereby that it must bear a portion of the burden. If within the limits of a levee district a parcel of land should be so situated as not to require the protection of the levee, that would be no reason for excluding it from its share of the expense; or if within the limits of a drainage district there should chance to be found a cliff, that would be no reason for exempting it from assessment.

The objection that the legislature has no authority to confer upon the supervisors of a county the right to create a corporation whose district shall embrace a portion of the territory of another county, does not arise in the present case. It is not contended that any portion of the Madera Irrigation District lies outside of the county of Fresno.

2. One of the objections to the sufficiency of the proceedings taken by the supervisors in authorizing a vote by the electors for the purpose of determining whether the district should be organized is, that the bond which accompanied the petition was so defective as to deprive the board of jurisdiction to authorize such election.

If it be conceded that the presentation to the board of a a bond with the petition is a jurisdictional prerequisite to

their consideration of the petition, we do not think that such element of jurisdiction was wanting in the present case. The bond which was presented, although informal, was not invalid, and was of binding obligation upon those who had signed it. In such a case the determination of its sufficiency by the board of supervisors was as conclusive as their determination respecting the pecuniary responsibility of its signers, or the amount for which the bond should be given.

3. Other objections to the constitutionality of the act and the sufficiency of the proceedings in the organization of the district have been presented by the appellants, but we think that they are covered by the views presented in the foregoing opinion. We do not think that the boundaries of the district or of the election precincts are so imperfectly described as to prevent the supervisors from acquiring jurisdiction for authorizing the organization of the district. The provision in the statute that the petition shall particularly set forth and describe the boundaries does not mean that they shall be set forth and described with more particularity. than would be necessary in an act of the legislature creating a political district or a municipal corporation. If the course of a boundary is given, it is not necessary that such course shall have been actually surveyed upon the ground before the boundary can be said to be particularly described; and a reference to an official map, or to a land-mark designated upon such map, is as definite as would be a reference to the land-mark itself. We cannot from their description say that the boundaries given in the petition are so indefinite that the district cannot be definitely located, or that they fail to embrace a distinct and definite territory. As illustrations of similar descriptions in acts of the legislature, we refer to the act incorporating the city of Sacramento (Stats. 1850, p. 70), and the act incorporating the city and county of San Francisco (Stats. 1856, p. 146); also the act setting forth the boundaries of the county of San Benito. (Stats. 1873–74, p. 75.) The case of *Crosby* v. *Dowd*, 61 Cal. 557,

referred to by appellants, was expressly overruled in *De Sepulveda* v. *Baugh*, 74 Cal. 468. The boundaries of a municipal corporation are not construed with any more strictness than is required in the case of a private grant. This subject was fully considered in *Central Irrigation District* v. *De Lappe*, 79 Cal. 351.

4. By the act of March 16, 1889 (Stats. 1889, p. 212), under which these proceedings were instituted, it is provided, in section 5, that "upon the hearing of such special proceedings the court shall have power and jurisdiction to examine and determine the legality and validity of, and approve and confirm, each and all of the proceedings for the organization of said district under the provisions of the said act, from and including the petition for the organization of the district, and all other proceedings which may affect the legality or validity of said bonds, and the order for the sale and the sale thereof." It is also provided, in section 2, that "the petition shall state the facts showing the proceedings had for the issue and sale of said bonds, and shall state generally that the irrigation district was duly organized, and that the first board of directors was duly elected; but the petition need not state the facts showing such organization of the district, or the election of said first board of directors." Section 4 of the act provides: "The provisions of the Code of Civil Procedure respecting the . . . . answer to a verified complaint shall be applicable to . . . . an answer to said petition. . . . . The rules of pleading and practice, provided by the Code of Civil Procedure, which are not inconsistent with the provisions of this act, are applicable to the special proceeding herein provided for." The petition in the present case states "that said Madera irrigation district was duly organized under the laws of the state of California, and especially under the provisions" of the act of March 7, 1887. The answers deny this allegation, and deny specifically that any of the steps required by the statute for the organization of the district were taken in reference thereto.

In order that the court might determine the legality
and validity of the proceedings, it was required by the
act in question to "examine" them.  The act provides
that it "shall have power and jurisdiction to examine
and determine the legality and validity of, and approve
and confirm each and all of, the proceedings for the or-
ganization of said district"; and unless it shall "exam-
ine" the proceedings, it would not have the power to
"determine" their legality and validity.  One step in
the proceedings, and that which was the foundation of
all others, and without which the whole superstructure
of the corporation and its acts, culminating in the bonds
sought to be validated, would have fallen, was, that a
petition should have been presented to the board of su-
pervisors, signed by fifty or a majority of freeholders
owning lands within the boundaries of the proposed dis-
trict.  It was necessary, therefore, for the petitioners
herein to make proof to the court that such a petition
had been presented to the board of supervisors.  Instead,
however, of making such proof, they introduced in evi-
dence the record of the proceedings of the board of super-
visors, which contained recitals that a petition had been
presented to said board, and that before hearing said
petition, "evidence to the satisfaction of the board was
adduced by petitioners upon the question whether or not
there were fifty petitioners whose genuine signatures
appeared affixed to said petition, who were *bona fide* free-
holders of lands within the proposed boundaries of said
proposed irrigation district"; whereupon the board, hav-
ing announced that they were satisfied that there were
fifty such freeholders whose signatures appeared affixed
to said petition, proceeded to hear said petition.  The
defendants objected to the introduction of this evidence,
upon the ground that no foundation had been laid there-
for, and that it was irrelevant, immaterial, and incom-
petent to establish any issue before the court.  The
objections were overruled, and an exception taken by
the defendants.  The petitioners then offered in evi-
dence a document purporting to be a petition, with the

signatures of upwards of fifty names attached thereto. To the introduction of this document the defendants objected, upon the ground that its execution had not been shown, and that there was no evidence that the parties whose names appeared attached thereto were freeholders owning lands within the district. The court overruled the objection, to which the defendants excepted. In these rulings the court erred. There was no proof that the petition had been signed by either of the persons whose names were attached thereto, or that either of said persons was a freeholder owning lands within the boundaries designated in the petition. Whether a petition had been presented to the board of supervisors of such a character as to give to that board jurisdiction to act in accordance with the provisions of the law in question, was an issue before the court to be determined by competent evidence. A declaration by the board of supervisors that such a petition had been presented, even though such declaration was spread upon their records, was not competent evidence in this proceeding, as it was only hearsay. No board or tribunal can obtain jurisdiction by its own recital that it has jurisdiction. It may be held that when the question of such jurisdiction arises in some collateral proceeding, the act of the board in recognition of the sufficiency of the petition would be presumptive of such sufficiency, yet when the very issue to be determined by the court is, whether the petition was sufficient to give jurisdiction, such issue must be established by evidence as competent as that which is required to establish an issue in any other proceeding. In the absence of any statutory declaration respecting the character of the proof by which any fact may be established in a court of justice, it must be established in accordance with the common-law rules of evidence. It is sometimes provided by statute that in proceedings of this nature the act of the board of supervisors shall be *prima facie* evidence of the regularity of all proceedings prior to the making of the order, as was the case in *Damp* v. *Town of Dane,* 29 Wis. 426, and also in *In the*

*Matter of Kiernan,* 62 N. Y. 459.   The effect of such provision is to throw the burden of proof upon those who would challenge the sufficiency of the petition.   In all cases it is essential that there be proof of a sufficient petition, inasmuch as without it the board could acquire no jurisdiction to act, and its proceedings would be absolutely void.   In the absence of such statutory provision, however, the burden of proving any affirmative allegation is upon him who makes it (Code Civ. Proc., ·sec. 1869), and it must be established under the ordinary rules of evidence.   The statute in the present case is silent with reference to the effect as evidence of the action of the board of supervisors upon the petition.   We are not aware of any statute which gives to their action any effect as evidence, or which makes their records evidence of any fact other than the corporate act therein recorded.   Their records can be competent evidence of only such matters as they are by statute authorized to make matters of record.   The statute herein does not authorize the board of supervisors to enter upon their records the facts which give them jurisdiction to hear the petition or any evidence of such facts, and the entry in their record of such facts or of such evidence does not give thereto any official sanction or right of recognition more than any other memorandum that may have been made by their clerk.

In *People* v. *Hagar,* 49 Cal. 232, when the question arose in a collateral proceeding, and it was contended that the certificate by the commissioners of a compliance by them with the requirements of the statute was evidence thereof, the court held otherwise, saying: " Whatever may have been the rule, if the statute had required the commissioners to state in their certificate to the assessment roll that they had jointly viewed and assessed the land, it is clear that the certificate can have no such conclusive effect, unless it was incumbent on the commissioners to certify that they acted jointly in viewing and assessing the land.   But as the statute does not require them to state that fact in the certificate, their having vol-

untarily done so was a superfluous act, and instead of being conclusive of the fact that they acted jointly, was not even *prima facie* evidence of it."

It was held in *Dean* v. *Davis*, 51 Cal. 406, that in a collateral proceeding the regularity of the proceedings under which the district had been organized could not be questioned, under the rule that, being a *de facto* corporation, only the state could take advantage of any irregularity .in its organization.    In *Lent* v. *Tillson*, 72 Cal. 422, the court, however, questioned the power of the county court in that case to pass upon the questions upon which its jurisdiction depended, so as to conclude an inquiry, even upon a collateral attack; and in *Kahn* v. *Supervisors*, 79 Cal. 400, the court said: " Nor should this jurisdiction be held to attach, whatever court may have ruled that the petition was signed by a majority, when in fact it was signed only by a minority of the owners designated by the statute."    The cases cited on behalf of the respondent in support of the action of the court below are all cases in which the question was presented in a collateral proceeding.    In *Humboldt Co.* v. *Dinsmore*, 75 Cal. 604, it was admitted that the persons who signed the petition were freeholders.    After jurisdiction had once been obtained, other proceedings subsequent thereto are movements within the jurisdiction, and can be questioned only by direct attack, but the fact of jurisdiction must be affirmatively shown whenever that is the issue to be determined.

It is unnecessary, however, in the present case, to determine what would be the rule if the question should arise in a proceeding where the jurisdiction would be collaterally attacked.    The question does not arise collaterally here.    The corporation has itself come into court and challenged an examination into the regularity of its organization, and asks the court to examine " each and all of the proceedings for the organization of said district."    Upon such a proceeding it becomes as necessary for it to establish such regularity, and to give evidence of each step therein, as fully as if its acts were

under investigation upon a writ of review, or as if the state were by *quo warranto* questioning its right to exercise the franchise of a corporation. In such a case it is incumbent upon it to make proof of every step required by statute for assuming corporate powers. (High on Extraordinary Legal Remedies, 712, 716; *Lanke* v. *Crawford*, 28 Mich. 88.) Upon *certiorari*, though the inferior tribunal is required to certify only matters of record, yet if the jurisdictional facts do not appear of record, it must certify "not only what is technically denominated the record, but such facts, or the evidence of them, as may be necessary to determine whatever · question as to the jurisdiction of the tribunal may be involved." (*Blair* v. *Hamilton*, 32 Cal. 52; *Whitney* v. *Board of Delegates*, 14 Cal. 479; *Lowe* v. *Alexander*, 15 Cal. 300.) The object of the act in question, as was said in *Board of Directors* v. *Tregea*, 88 Cal. 334, is for the purpose of affording to investors in the bonds the security of a judicial determination of their validity, and, in order that this may have the effect intended by the legislature, it is not sufficient for the court to perform the mere perfunctory office of recording the determination of the board of supervisors that its proceedings in the organization of the district were regular. The court is not a *lit de justice* for the mere purpose of entering of record the rescripts of the board of supervisors and giving to them the dignity of its own judgment.

When the defendants controverted the allegations of the petition, that the irrigation district was duly organized, it became necessary for the petitioners to establish at the trial the facts showing that it had been duly organized.

Section 456 of the Code of Civil Procedure provides: "In pleading a judgment or other determination of a court, officer, or board, it is not necessary to state the facts conferring jurisdiction, but such judgment or determination may be stated to have been duly given or made. If such allegation be controverted, the party pleading must establish on the trial the facts conferring jurisdic-

tion." The provision in the act in question that the rules of pleading and practice provided by the Code of Civil Procedure should be applicable to this proceeding made it incumbent upon the petitioner to establish the due organization of the district by evidence competent therefor. We are not aware of any decision in this state in which it has been held that the decision of an inferior board upon the question of its own jurisdiction was conclusive on a collateral attack, or even *prima facie* evidence of the fact in a direct proceeding. In *Litchfield* v. *Vernon*, 41 N. Y. 123, the legislature had authorized a local improvement to be made "upon application of a majority of the owners of land in the district proposed to be assessed, and the sufficiency of an assessment therefor was afterwards contested in the courts. Upon the hearing in the court of appeals, that court used the following language: "This brings us to the only remaining question in the case, and that is, whether there was any competent evidence authorizing a finding that a majority of the owners of land within the territory made subject to assessment made application to the common council, requesting them to make application to the supreme court for the appointment of three commissioners, as provided by the first section of the act of 1859. The act itself is wholly silent as to how this essential fact shall be proved. The right of the common council to apply for the appointment of the commissioners lies at the foundation of the whole proceeding. Unless this right existed, all the proceedings in appointing the commissioners, and subsequent thereto, are void. This right depends upon the question whether a majority of the land-owners petitioned the common council to proceed under the act. In the absence of such petition, the common council had no authority in the premises, and nothing could be done under the act. The act does not provide for the determination of this fact by the common council, nor by the special term, upon the presentation of the petition for the appointment of the commissioners. The act being silent as to what should be deemed proof

of the fact that a majority of the land-owners petitioned the common council, the plaintiff was bound to prove such fact by competent common-law evidence. This could be done by proof showing who were the owners of the land at the time of the passage of the act, and that a majority of such persons petitioned the common council, as required by the first section of the act. Neither the application of the council to the court, nor the affidavit of the mayor accompanying such application, was evidence of this fact against the defendant. (*Sharp* v. *Speir*, 4 Hill, 76.) There was no competent evidence of this fact given upon the trial, and the exception to the finding of this fact by the judge was well taken."

In *Thorn* v. *West Chicago Park Commissioners*, 130 Ill. 594, the same question was presented. The statutes of Illinois provided that the board of park commissioners might take jurisdiction over certain streets upon first obtaining the consent, in writing, of the owners of a majority of the frontage of the lots and lands abutting thereon, and also provided for a confirmation of any assessment made therefor by the circuit court, upon the application of the commissioners, after notice therefor to the lot-owners. At the hearing of the application for confirmation of the assessment roll returned by the commissioners in the above case, the commissioners offered a paper purporting to be the petition and consent of the abutting lot-owners, and showed that such paper came from the files kept by the board of commissioners, and was the written consent acted upon by the board in adding the streets for the purpose contemplated. The court below, upon the objection to the competency of this evidence, held that this document made a *prima facie* case for the commissioners, and cast the burden upon the objectors to show that it was not the written consent of the property owners, as it purported to be. Upon appeal, however, the supreme court reversed the action of the court below, saying: "We cannot concur in the holding of the trial court. As we have seen, the burden

was on the park commissioners to show affirmatively the jurisdictional fact of consent by the owners of the required amount of frontage. The evidence in respect thereto was, we think, wholly insufficient. Waiving the matter of proving ownership by the persons purporting to sign the paper admitted in evidence, it is not shown that a sufficient number of such persons signed the consent to constitute consent by the owners of a majority of the abutting property. The only person introduced who testified generally to the execution of the writing testifies that he procured the signatures of most of the signers, but not all, and he does not testify, except in a few instances, either as to those he did or did not procure. The writing here offered is not signed by the objectors, and we are aware of no rule by which it was admissible in evidence against them, without proof of its execution, nor is the consent at all aided by the fact that the park commissioners acted upon the paper introduced in evidence. While the park commissioners must, in the first instance, pass upon the fact of consent by the owners of abutting property, and determine for themselves whether those owning a majority of the frontage of the property had consented to their appropriation of the street for the purposes contemplated by the act, such determination can have no effect when their jurisdiction is challenged in endeavoring to carry out the powers conferred by the statute. The power conferred upon the park board affects and impairs the right of the citizen, and may encumber his property without his consent, and may arbitrarily impose onerous burdens for which there is no relief or redress. The legislature has interposed the safeguard of requiring the consent of the owners of more than one half of the property to be affected, upon the presumption, no doubt, that what will be of benefit to the greater portion will not unduly prejudice the lesser part, and when the commissioners sought confirmation of their assessment upon appellant's property, under the power conferred by the statute, it was incumbent upon them to show compliance with the law, by which alone

they obtained jurisdiction to impose the burden. This they have not done." (See also *Pittsburg* v. *Walter*, 69 Pa. St. 365.)

5. The order for the issuance of the bonds is, that eight hundred and fifty thousand dollars be issued, and that the said bonds shall be payable in installments, as follows: "At the expiration of eleven years, not less than five per cent of said bonds; at the expiration of twelve years, not less than six per cent of said bonds," etc. Section 15 of the statute provides: "Said bonds shall be payable in gold coin of the United States, in installments as follows, to wit: At the expiration of eleven years, not less than five per cent of said bonds; at the expiration of twelve years, not less than six per cent," etc. In *Central Irrigation District* v. *De Lappe*, 79 Cal. 351, the form of the bond in connection with this provision of the statute was discussed. It was there held that the bonds to be issued should be in such form that each bond would be payable in installments of such percentage in each year as is designated in the statute, and that an order making that percentage of the entire issue of the bonds payable in the designated years would not be a compliance with the statute. In the present case, if five per cent of the eight hundred and fifty thousand dollars should be payable at the expiration of eleven years, and the board of directors should not sell or dispose of more than that percentage of the entire issue of bonds, it would make the entire amount of outstanding bonds payable at the expiration of eleven years; whereas the board of directors, under section 22 of the act in question, are authorized at the expiration of ten years after the issuing of said bonds to levy an assessment for only five per cent of the principal of the whole amount of bonds then outstanding.

This provision in the order does not, however, affect the substance of the order for the issuance of the bonds, but merely the form in which the bonds are to be issued, and does not itself invalidate the proceedings had by the district for the issuance of the bonds. The district voted

for the issuance of bonds to the amount of eight hundred and fifty thousand dollars, to be issued in accordance with the provisions of the statute. The manner in which those bonds were to be issued is prescribed by the statute, and can be followed by the board whenever their issuance becomes necessary. The court, however, instead of approving and confirming this order, should have limited its order of confirmation to that portion thereof which designated the amount of the bonds to be issued, leaving to the board itself the duty of preparing the bonds in the form required by the statute.

6. In its decree, the court, after determining the legality and validity of the proceedings, added thereto the following: "And it is further ordered, adjudged, and decreed that all persons, and each and every person, interested in the organization of said irrigation district, save and except the appellants herein, be forever debarred and precluded from disputing, denying, or disclaiming any fact or facts relating to the organization of the said district, or providing for and authorizing the issue and sale of the bonds of said district, which might by them have been denied, questioned, or disputed in this proceeding."

This portion of its judgment was unauthorized. The statute does not confer upon the court any power or jurisdiction to do more than " examine and determine the legality and validity of, and approve and confirm," the proceedings had under said act. What the effect of its determination and judgment may be is to be determined by the court in which it shall at any time hereafter be offered in evidence. The statute makes no provision for including therein an injunction against those who may not have seen fit to question its action in this proceeding, and against whom there has been no service, except by the publication of the notice directed by the court. If by virtue of such inaction on their part they should be hereafter precluded or estopped from questioning the sufficiency of the action of the court in this proceeding, that question must be determined by the court in which

any attempt may be made to avoid the effect of the judgment herein.

For the error committed by the court in admitting evidence as hereinbefore stated, the judgment is reversed.

McFarland, J., Garoutte, J., Sharpstein, J., Paterson, J., and De Haven, J., concurred.

Beatty, C. J. — Until the filing of the supplemental briefs in this case I had supposed that the constitutionality of the statute commonly known as the Wright Act has been definitely settled by the decision of this court in the case of *Turlock District* v. *Williams*, 76 Cal. 360, in which I was one of the counsel employed to defend the validity of the act. I therefore sat at the hearing of this case with the expectation of participating in its decision, but on becoming aware of the fact that the constitutionality of the law was again seriously drawn in question upon all the grounds formerly taken, and upon several others, I concluded that although I might not be disqualified in a strict sense in this particular case, I could not with perfect propriety take part in deciding it, and for that reason express no opinion.

A petition for a rehearing having been filed, the following opinion was rendered thereon on the 13th of January, 1892: —

The Court. — In their petition for a rehearing, appellants have called attention to the fact that in the opinion heretofore rendered the court has failed to pass upon two propositions urged by them in their appeal, and request that if, in the opinion of the court, these propositions are untenable, it be so stated, in order that there may be no occasion for another appeal in which to present them for consideration.

It does not follow from the fact that the propositions were not discussed in the former opinion that they were not fully considered. Because each proposition urged in the briefs of an appellant is not taken up and dis-

cussed *seriatim*, it does not follow that they have not all received due consideration. A due regard for the amount of business before the court, and the time allowed for its disposition, compels us to limit the opinions in the several cases to such principles and rules of law as will be a guide to the courts below in disposing of the case upon its return, and a rule of action for the citizens of the state in their subsequent transactions.

The proposition again called to our notice by the appellants in their petition for a rehearing, that the act in question is in violation of the provision of article XI., section 18, of the constitution prohibiting certain public corporations from incurring indebtedness "without the assent of two thirds of the qualified electors thereof, voting at an election to be held for that purpose," cannot be maintained. This prohibition in the constitution is limited to the public corporations enumerated in that section, viz., " county, city, town, township, board of education, or school district," and, under familiar rules of construction, cannot be extended to any other public corporation. Many of the sections of this article of the constitution include in their provisions " any public or municipal corporation" (secs. 10, 12, 16), while the provisions of section 19 are limited to a "city," and of section 11, to a "county, city, town, or township." In view of the fact that different provisions are made in the constitution for different classes of public corporations, it must be held that the prohibition in section 19 is limited to the corporations which are therein designated. For such other corporations for municipal purposes as under the provisions of section 6 the legislature might by general laws authorize to be incorporated, the constitution has left to the legislature power to provide the terms and conditions upon which an indebtedness may be created, as well as its amount. At the time that the constitution was framed and adopted, there were many other public corporations in the state, such as reclamation and irrigation districts, that had been organized for many years, and if

it had been the intention to subject all such corporations to the prohibition, we must conclude that express language·therefor would have been inserted in the constitution. The case of *Harshman* v. *Bates County*, 92 U. S. 569, cited by the appellants, is inapplicable. The constitution of Missouri had required the assent of two thirds of the qualified electors of a "county, city, or town," as a prerequisite to a subscription for building a railroad, and it was held that the legislature could not confer authority upon a "township" to vote a credit for such subscription; that while counties, cities, and towns had a corporate character and organization, a township was only a geographical division of the county; and that the provision of the constitution prohibiting a county from voting such credit could not be evaded by authorizing the several geographical subdivisions of the county to vote such credit.

The fact that the town of Madera is included within the boundaries of the Madera Irrigation District neither renders the act unconstitutional nor invalidates the organization of the district. This principle was discussed and was sustained in *Modesto Irrigation District* v. *Tregea*, 88 Cal. 334. The objection that the land within a town or city cannot be benefited by a system of irrigation, and therefore cannot be taxed for such improvement, proceeds upon an erroneous view of the power of taxation. While the benefit to the land is assumed as the basis of the assessment, still, as was said in *Lent* v. *Tillson*, 72 Cal. 428, such benefit is not the source of the power. Even though the land is not susceptible of irrigation, yet it may be benefited by the improvement, and should bear its proportion of the burden upon the same principle that land in a city which can make no use of a sewer or other street improvement is nevertheless deemed to receive a benefit from its construction, and is required to pay a portion of its cost. The object of the act is the improvement of the district as an entirety, and the extent of the district, as well as the lands to be included therein, has been left to be determined by

the discretion of the board of supervisors. Whether they have properly or improperly exercised such discretion cannot be investigated by the courts. The act cannot be declared unconstitutional by reason of any improper exercise of such discretion. Neither is it in violation of the constitution to incorporate into such district a town or city that has been incorporated for other municipal purposes. A system of irrigation contemplated by the act in question cannot be considered as a "municipal purpose" within the scope of the organization of a city or town, and there can be no conflict between a corporation organized under the act to produce a system of irrigation within the district, and the municipal incorporation of the town of Madera. A water supply for the two corporations is distinct and for different purposes. The liability of the inhabitants of the town of Madera for the bonded indebtedness of the Madera Irrigation District, as well as for that of their own municipality, does not impair the validity of the organization of the district. It is a liability of the same character as rests upon the inhabitants of any town for its proportion of all the indebtedness of the county within which it is situated.

Rehearing denied.