[No. 12426.  In Bank. — May 31, 1888.]

TURLOCK IRRIGATION DISTRICT, PETITIONER, *v.*
R. W. WILLIAMS, SECRETARY ETC., RESPONDENT.

IRRIGATION DISTRICTS — ACT OF MARCH 7, 1887 — CONSTITUTIONAL LAW. —
    The act of March 7, 1887, providing for the organization and government
    of irrigation districts, and the provisions thereof relative to the condem-
    nation of private property, land, water, etc., for the uses prescribed
    therein, are constitutional.

ID. — IRRIGATION DISTRICTS PUBLIC CORPORATIONS. — The irrigation dis-
    tricts provided for in the act are *quasi* public corporations, in the sense
    that the purposes for which they are to be organized is for the general
    public benefit.

ID. — METHOD OF ASSESSMENT — GENERAL SYSTEM OF TAXATION. — It is
    not necessary to their validity that the methods adopted for the levy of
    assessments and for their collection should be assimilated to and follow
    exactly the mode provided in the constitution for the assessment and
    collection of taxes for general state purposes.

THIS is a proceeding to compel the respondent, the
secretary of Turlock Irrigation District, to sign certain
bonds ordered to be issued against said district by the
board of directors thereof.

The act under which said district was organized, and
upon the authority of which it is asked that the re-
spondent be compelled to sign said bonds, was approved
March 7, 1887.

The first section of said statute provides for the or-
ganization of irrigation districts upon petitions filed
with the board of supervisors by fifty or a majority of
freeholders owning land susceptible of one mode of irri-
gation from a common source.  It is also required that
after a petition is filed the board of supervisors shall
make an order fixing the boundaries of the district, and
shall thereupon call an election, of which notice is re-
quired to be given, at which the electors residing within
the proposed district are permitted to vote for or against
its organization.

It is also provided that, if two thirds of the electors
residing within said proposed district vote in favor of

its organization into an irrigation district, the board of supervisors shall declare the district duly organized.

The act also provides for the election of an assessor, a collector and treasurer, and board of five directors for the district. To the board of directors is given the power to manage and conduct the business and affairs of the district, make and execute all necessary contracts, employ and appoint such agents, officers, and employees as may be required, prescribe their duties, establish equitable by-laws, rules, and regulations for the distri- bution and use of the water among the owners of said land, and generally to perform all such acts as shall be necessary to fully carry out the purposes of the act. General power is given to the board of directors to enter upon lands in the district and make surveys, to locate the lines of canals, to acquire by purchase or condemna- tion all lands and waters and other property necessary for the construction, use, supply, maintenance, repair, and improvement of said canal or canals and works, to construct dams, reservoirs, and works for the collection of water, and to do any and every lawful act necessary to be done in order that sufficient water may be furnished to each land-owner in said district for irrigation purposes.

Power is also conferred upon said board of directors to estimate and determine the amount of money neces- sary to be raised for the purposes of the act, and for the purpose of raising said money, to call an election, and submit to the electors residing within said district the question whether or not the bonds of said district shall be issued in the amount so determined to be necessary. Said board also has power under said act to sell said bonds.

It is provided by section 13 of said act that the legal title to all property acquired under the provisions there- of shall immediately, and by operation of law, vest in the irrigation district, and shall be held by such district in trust, for the uses and purposes set forth in the act.

In said section it is provided that the board may hold, use, acquire, manage, occupy, and possess said property as provided in said act. It is also provided that the bonds issued by order of the board of directors and the interest thereon shall be paid by revenue derived from an annual assessment upon the real property of the district, and that all the real property in the district shall be, and remain liable to be assessed for such payment, as provided in said act. Provision is also made for the assessment of said property by the assessor of the district, for the publication of the delinquent list, the collection of penalties on delinquent assessments, the sale of property for the purpose of paying said assessments, the redemption of the property, the execution of deeds by the collector of said district transferring absolutely the property of land-owners within the district refusing to submit to the tax and assessment provided for, the vesting of title in the purchaser, etc.

It is also provided by section 23 of said act that the assessment upon real property shall constitute a lien against the property assessed from and after the 1st of March of any year, and that such lien shall not be removed until such assessments are paid, or the property sold for the payment thereof. Provision is also made for the apportionment of water among the residents of the district. The further facts are stated in the opinion.

*P. J. Hazen, Hatton & Fulkerth*, and *W. H. Beatty*, for Petitioner.

The districts provided for in the act of March 7, 1887, are public or *quasi* public corporations, and the purposes for which they are intended are public. (*Tide Water Co.* v. *Coster*, 18 N. J. Eq. 521; 90 Am. Dec. 634; *Hartwell* v. *Armstrong*, 19 Barb. 166; *Lux* v. *Haggin*, 69 Cal. 303; *Gilmer* v. *Lime Point*, 18 Cal. 252; Cooley on Taxation, 2d ed., 103; *Olmstead* v. *Camp*, 33 Conn. 532; 89 Am. Dec. 221; *Talbot* v. *Hudson*, 82 Mass. 417; *Coomes* v. *Burt*, 39 Mass.

427; *Wurts* v. *Hoagland,* 114 U. S. 606; *Head* v. *Amoskeag Mfg. Co.,* 113 U. S. 9; Const., art. 14, sec. 1; *Hagar* v. *Reclamation District,* 111 U. S. 701; *Hagar* v. *Yolo Co.,* 47 Cal. 222; *Reclamation District* v. *Hagar,* 66 Cal. 54; *C. W. & Z. R. R.* v. *Com. Clinton Co.,* 1 Ohio St. 94; *Barbier* v. *Connelly,* 113 U. S. 27; *S. & V. R. R. Co.* v. *Stockton,* 41 Cal. 147.)   The charge imposed for the purpose of paying the bonds is strictly an assessment for local improvement, and not a general tax; consequently, the methods adopted for enforcing the assessments need not conform to the requirements of the constitution in reference to general taxation.   (Dillon on Municipal Corporations, 752; Desty on Taxation, 151, 171; Cooley on Taxation, 639; *Goodrich* v. *W. & D. T. Co.,* 26 Ind. 119; *Creighton* v. *Scott,* 14 Ohio St. 438; *Seattle* v. *Yesler,* 1 Wash. 571; *Dailey* v. *Swope,* 47 Miss. 367; *Mason* v. *Spencer,* 35 Kan. 512; *McGehee* v. *Mathis,* 21 Ark. 40; *Emery* v. *S. F. Gas Co.,* 28 Cal. 346; *Burnett* v. *Sacramento,* 12 Cal. 76; 73 Am. Dec. 518.)   The legislature had constitutional authority to commit the power to levy the assessment to a special board.   (*Hagar* v. *Reclamation District No. 108,* 111 U. S. 701.)   It is not necessary that the local improvement for which the assessment is levied should be confined within the district taxed.   (*Pattison* v. *Yolo County,* 13 Cal. 189.)   The legislature has power to determine all questions of policy involved in the formation of an irrigation district, and might delegate such power to boards of supervisors or other subordinate bodies.   (*Pearson* v. *Zable,* 78 Ky. 170, Cooley on Taxation, 150; *Kelsey* v. *Trustees of Nevada,* 18 Cal. 630; Desty on Taxation, 1247; *Hagar* v. *Reclamation District No. 108,* 111 U. S. 701; *Abbott* v. *Dodge,* 18 Neb. 1240.)   The mode provided by the act for the levy and collection of the assessment is not a denial of due process of law.   (*Davidson* v. *New Orleans,* 96 U. S. 97; *Hagar* v. *Yolo County,* 47 Cal. 222; Burroughs on Taxation, sec. 145; *Hagar* v. *Reclamation District No. 108,* 111 U. S. 708.)   The assessment

need not be *strictly* according to benefits. Approximation is all that can be attained, and all that is required. (Cooley on Taxation, 2d ed., 167; *Egyptian L. Co.* v. *Hardin,* 27 Mo. 495; 72 Am. Dec. 276; *Emery* v. *S. F. Gas Co.,* 28 Cal. 346.) The assessment in question is as strictly according to benefits as could be attained in any case, and far more so than in most cases of local assessments, and the best mode applicable in this matter. (Cooley on Taxation, 2d ed., 660, 661; *Downer* v. *Boston,* 61 Mass. 277; *Piper's Appeal,* 32 Cal. 530; *Wright* v. *Boston,* 63 Mass. 233; *Boston* v. *Shaw,* 42 Mass. 130; *Goodrich* v. *U. & D. T. Co.,* 20 Ind. 119; *Dailey* v. *Swope,* 47 Miss. 367; *Williams* v. *Cammack,* 27 Miss. 209; 61 Am. Dec. 508; *Wallace* v. *Shelton,* 14 La. Ann. 498; *Spencer* v. *Merchant,* 100 N. Y. 585; *Excelsior Mfg. & P. Co.* v. *Green,* 39 La. Ann. 455; *Lent* v. *Tillson,* 72 Cal. 404.)

*Loutitt, Woods & Levinsky,* for Respondent.

The statute authorizes the assessment and taking of private property for a private purpose. (Sedgwick on Constitutional Law, 2d ed., 446–450; *Anderson* v. *Kerns Draining Co.,* 19 Ind. 199; 77 Am. Dec. 63; *People* v. *Saginaw,* 26 Mich. 22; *Sadler* v. *Longham,* 34 Ala. 329; *Memphis Freight Co.* v. *Mayor etc.,* 3 Coldw. 420; *Donnelly* v. *Decker,* 58 Wis. 461; *Matter of Reyes,* 72 N. Y. 1; *Burk* v. *Ayers,* 26 Hun, 17; *McQuillen* v. *Hatton,* 42 Ohio St. 202; *Chesbrough* v. *Commissioners,* 37 Ohio St. 508; *Reeves* v. *Wood County,* 8 Ohio St. 333; *Sessions* v. *Crunkilton,* 20 Ohio St. 349; Cooley's Constitutional Limitations, 5th ed., 633.) The statute authorizes the assessment and taking of private property without reference to actual benefits, and the apportionment is unequal and unjust; consequently the statute is unconstitutional. (*Boston* v. *Shaw,* 42 Mass. 130; *Thomas* v. *Gain,* 35 Mich. 155; 24 Am. Rep. 535; *Lee* v. *Ruggles,* 62 Ill. 427; *Tide Water Co.* v. *Coster,* 18 N. J. Eq. 527; 90 Am. Dec. 634; *Howell* v. *Bristol,* 8 Bush, 493; *Hammett* v. *Philadelphia,* 65 Pa. St.

146; 3 Am. Rep. 615; *Hoboken Land etc. Co.* v. *Mayor etc.,* 36 N. J. L. 291; *Morris and Essex R. R. Co.* v. *Jersey City* 36 N. J. L. 56; *In re Pequest River*, 39 N. J. L. 433; *Kellogg* v. *Elizabeth*, 40 N. J. L. 274; *Dyar* v. *Farmington Village Corporation*, 70 Me. 528; *In re Washington Avenue*, 69 Pa. St. 352.) The statute is void because it authorizes the taking of private property without due process of law. (Cooley's Constitutional Limitations, 355; *Bank of Columbia* v. *Oakley*, 4 Wheat. 244; *Davidson* v. *New Orleans*, 96 U. S. 107.) The statute authorizes private property to be assessed and sold to pay for a future, uncertain, and contingent improvement. (*In re Drainage of Pequest River*, 39 N. J. L. 433; *In re Fourth Avenue*, 3 Wend. 452; Const. Cal., art. 1, sec. 14.) The assessment is not limited to the benefits conferred. The statute allows the board of directors and voters of the district to raise the assessment as high as they please, even though the cost of the improvement will exceed the benefits. (*Crawford* v. *People*, 82 Ill. 557; *In re Fourth Avenue*, 3 Wend. 452; Welty on Assessments, secs. 331, 337; *Eel River Draining Ass'n* v. *Topp*, 16 Ind. 242; *Dukes* v. *Working*, 93 Ind. 504; *Echison Ditch Ass'n* v. *Hills*, 40 Ind. 410; *Smith* v. *Duck Pond Ditch Ass'n*, 45 Ind. 96.) The statute authorizes the formation of a district and the assessment of lands without giving all the landholders a right of hearing. (*Boorman* v. *Santa Barbara*, 65 Cal. 314; *Stuart* v. *Palmer*, 74 N. Y. 183; 30 Am. Rep. 289; *Remsen* v. *Wheeler*, 105 N. Y. 573; *Patten* v. *Green*, 13 Cal. 325; *Stockton* v. *Whitmore*, 50 Cal. 554; Cooley's Constitutional Limitations, 385, 386.) The act is a usurpation of judicial powers by the legislature, and a delegation of judicial powers to the board of supervisors. (Cooley's Constitutional Limitations, 89, 92.) The act, in contravention of the constitution, delegates to the board of directors of the district and to the electors legislative powers, and grants to a special commission and private individuals power to levy taxes. (Const.,

art. 11, sec. 13; *Moulton* v. *Parks*, 64 Cal. 166; *Ex parte Wall*, 48 Cal. 279; 17 Am. Rep. 425; *Houghton* v. *Austin*, 47 Cal. 646; Cooley on Taxation, 48–50; *Richardson* v. *Heydenfeldt*, 46 Cal. 68.) The statute grants special privileges to a certain class of citizens, and discriminates in favor of a particular industry. (Opinion of Judges, 58 Me. 590; *Brewer Brick Co.* v. *Brewer*, 62 Me. 62; 16 Am. Rep. 395; *Ames* v. *Port Huron Log Driving etc. Co.*, 11 Mich. 139; Const., art. 1, sec. 1; art. 4, sec. 25, subd. 17.)

*A. L. Hart, amicus curiæ,* for Respondent.

The district formed under the act for the purpose of irrigating private lands, and thus increasing their productiveness and value, is in every respect a private corporation. (Wood's Field on Corporations, sec. 3; 1 Dillon on Municipal Corporations, 3d ed., secs. 22, 56; *Ten Eyck* v. *Canal Co.*, 3 Harr. 200; 37 Am. Dec. 233; *Hanson* v. *Vernon*, 27 Iowa, 28; 1 Am. Rep. 215; *Regents of University* v. *Williams*, 9 Gill & J. 365; 31 Am. Dec. 72; *Allen* v. *McKean*, 1 Sum. 278; *Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Bailey* v. *Mayor*, 3 Hill, 531; 38 Am. Dec. 669; *Rundell* v. *D. & R. C. Co.*, 1 Wall. Jr. 275; *Tinsman* v. *Belvidere Delaware R. R. Co.*, 26 N. J. L. 148; 59 Am. Dec. 565; *North Yarmouth* v. *Skillings*, 45 Me. 133; 71 Am. Dec. 530; *Ellis* v. *Marshall*, 2 Mass. 268; 3 Am. Dec. 49; *Yarmouth* v. *North Yarmouth*, 34 Me. 411; 56 Am. Dec. 666; *Payne* v. *Treadwell*, 16 Cal. 233.)

*W. L. Dudley,* for Respondent.

The district created under the act is a public corporation. (*Hagar* v. *Yolo Co.*, 47 Cal. 223; *Dean* v. *Davis*, 51 Cal. 406; *People* v. *Williams*, 56 Cal. 647; *People* v. *La Rue*, 67 Cal. 526; *Reclamation District* v. *Hagar*, 66 Cal. 54.) The assessment levied for the revenue purposes of the act is neither more nor less than taxation, and the amount imposed upon each separate parcel of real property is a tax. (*Emery* v. *San Francisco Gas*

*Co.*, 28 Cal. 345; *Taylor* v. *Palmer*, 31 Cal. 240; *People* v. *Whyler*, 41 Cal. 351; *Williams* v. *Corcoran*, 46 Cal. 553; *People* v. *Austin*, 47 Cal. 353; *Hagar* v. *Yolo Co.*, 47 Cal. 222; *People* v. *Lynch*, 51 Cal. 15; 21 Am. Rep. 677.)   The proceedings for the levy and collection of the assessment, as provided in the act, are repugnant to the constitution.   (Const., art. 13, secs. 8, 9; art. 11, sec. 19; art. 14, sec. 1.)

*W. T. Baggett*, for Respondent.

The act is special legislation.   It relates to particular localities, — districts susceptible of irrigation from a common source.   Such legislation is prohibited by subdivisions 10, 28, and 33 of section 25 of article 4, section 1 of article 12, and section 6 of article 11, of the constitution of the state.   (*Earle* v. *Board of Education*, 55 Cal. 489; *Desmond* v. *Dunn*, 55 Cal. 242; *Ex parte Westerfield*, 55 Cal. 550; 36 Am. Rep. 47.)

FOOTE, C.—This is an application for a writ of mandate to compel the defendant, as the secretary of an irrigation district (under the "act to provide for the organization and government of irrigation districts," etc., approved March 7, 1887, Sess. Laws, p. 29), to sign certain bonds which the applicant proposes to issue under section 15 of that act.

The refusal of the defendant to sign those instruments is based upon the ground that the statute is unconstitutional and void.

One of the distinguished counsel for the defendant contends that the districts contemplated by the act are private corporations, formed for a private purpose; to use his own language: "Such an organization has none of the elements of a public municipal body."

While another able attorney on the same side contends that "all the constituents of a public corporation are present, and to that class of corporations a district

of the statute must be assigned," and claims that the money sought to be raised under the act *is a general tax*, and that the system of organization of the corporations prescribed in the act is in conflict with the general plan of constitutional political organizations, and that the mode of taxation provided is different from that made necessary by the constitution for general governmental purposes, and therefore the act is void.

We are inclined to agree with the last-mentioned advocate of the defendant's cause, but to the extent only that the districts, when organized as provided in the act under discussion, have all the elements of corporations formed to accomplish a public use and purpose, according to the rules of law laid down in *Hagar* v. *Supervisors Yolo County*, 47 Cal. 223; *Dean* v. *Davis*, 51 Cal. 406; *People* v. *Williams*, 56 Cal. 647; *People* v. *La Rue*, 67 Cal. 526; *Reclamation District* v. *Hagar*, 66 Cal. 54.

The results to be derived from a drainage law, and one which has for its purpose the irrigation of immense bodies of arid lands, must necessarily be the same, as respects the public good; the one is intended to bring into cultivation and make productive a large acreage of land which would otherwise remain uncultivated and unproductive of any advantage to the state, being useless, incapable of yielding any revenue of importance toward the support of the general purposes of state government, by reason of too much water flowing over, or standing upon, or percolating through, them.

The other has for its main object the utilizing and improvement of vast tracts of arid and unfruitful soil, desert-like in character, much of it, which, if water in sufficient quantity can be conducted upon and applied to it, may be made to produce the same results as flow from the drainage of large bodies of swamp and overflowed lands.

Such a general scheme, by which immigration may be stimulated, the taxable property of the state increased,

the relative burdens of taxation upon the whole people decreased, and the comfort and advantage of many thriving communities subserved, would seem to redound to the common advantage of all the people of the state, to a greater or less extent.

It is true that incidentally private persons and private property may be benefited, but the main plan of the legislature, viz., the general welfare of the whole people, inseparably bound up with the interests of those living in sections which are dry and unproductive without irrigation, is plain to be seen pervading the whole of the act in question.

This is not a law passed to accomplish exclusive and selfish private gain; it is an extensive and far-reaching plan, by which the general public may be vastly benefited; and the legislature acted with good judgment in enacting it.

"If the use for which property is taken be to satisfy a great public want or public exigency, it is a *public use* within the meaning of the constitution, and the state is not limited to any given mode of applying that property to satisfy the want or meet the exigency." (*Gilmer* v. *Lime Point*, 18 Cal. 252.)

"For the most part, the term 'public purposes' is employed in the same sense in the law of taxation and in the law of eminent domain." (Cooley on Taxation, 2d ed., 113.)

So that a law which is for a public purpose, and which mainly concerns the public welfare, which lays an assessment upon property according to approximate equality of benefits, is not unconstitutional because of that feature.

Perhaps to a greater extent than any of the other states, California, speaking through the acts of her legislature, her court of last resort, and constitution, seems to have considered the irrigation of lands and the supplying of mines with water as of great public con-

cern. (Code Civ. Proc., sec. 1238; *Cummings* v. *Peters,* 56 Cal. 596; *Lux* v. *Haggin,* 69 Cal. 302–305; Const., art. 14, sec. 1.)

And in no sense can it be said that under the act in question the assessment to pay the bonds is to be levied or collected in order that one man may take another's property for his own *exclusive use.*

Therefore it is evident that the districts in question, as organized under the act, are not private corporations, organized exclusively for the purposes of private gain. They are at least *quasi* public corporations in the sense that the purpose for which they are to be organized is for the general public benefit.

Nor does it follow that the method of assessments and their collection adopted must be assimilated to and follow exactly the mode provided in the constitution for the assessment and collection of taxes for general state purposes.

The nature of the assessment is one for local improvements, which, however, eventuate in the advancement of the public good, and such assessments and collections can be lawfully made.

It is "clear that those clauses of the constitution which provide that taxation shall be equal and uniform, and which prescribe the mode of assessment, and the persons by whom it shall be made, and that all property shall be taxed, have no application to assessments levied for local improvements." (*Hagar* v. *Supervisors of Yolo County,* 47 Cal. 222.)

And as was said of the drainage act, so it may be said of the one in hand relative to irrigation, that a system which has for its object the reclaiming from the desert of vast bodies of land "may justly be regarded as a public improvement of great magnitude, and of the utmost importance to the community." It has been planned by the legislature on the basis of "dividing the territory to be reclaimed into districts, and assessing the

cost of the improvements on the lands to be benefited." In none of the states where such a course has been pursued "has the power of the legislature to cause such improvements to be made in this method ever been denied; nor do we see any tenable ground upon which it can be questioned." (*Hagar* v. *Supervisors of Yolo County*, 47 Cal. 222.)

"The fact that the lands are situated in more than one county cannot affect the power of the state to delegate authority for the establishment of a reclamation district," or an irrigating district, "to the supervisors of the county containing the greater part of the lands. Such authority may be lodged in any board or tribunal which the legislature may designate. . . . . The expense of such works may be charged against parties specially benefited, and be made a lien upon their property. All that is required in such cases is, that the charges shall be apportioned in some just and reasonable mode, according to the benefit received. Absolute equality in imposing them may not be reached, only an approximation to it may be attainable. If no direct or invidious discrimination in favor of certain persons to the prejudice of others is made, it is not an objection to the mode pursued that to some extent inequalities may arise.

"It may possibly be that in some portions of the country there are overflowed lands of so large an extent," or arid lands requiring irrigation, "that the expense of their reclamation should properly be borne by the state. But this is a matter of purely legislative discretion. Whenever a local improvement is authorized, it is for the legislature to prescribe the way in which the means to meet its costs shall be raised, whether by general taxation or by laying the burden upon the district especially benefited by the expenditure." (*Hagar* v. *Rec. Dist.*, 111 U. S. 705, citing *Mobile Co.* v. *Kimball*, 102 U. S. 691–704.)

The provisions of the act relative to the condemnation of private property, land, water, etc., for the uses pre-

scribed th.rein, are in harmony with the constitution and state laws, and in strict consonance with the views of the supreme court in the case of *Lux* v. *Haggin*, 69 Cal. 302–305.)

There are many other points made by the various counsel for the appellant, which are some of them at war with others; but time and space do not suffice to advert to them all in detail. It seems plain that none of the objections raised to the signing of the bonds by the respondent are tenable. The act under discussion in all respects complies with the various provisions of the state constitution. We therefore advise that the demurrer to the answer be sustained, and the defendant commanded to sign the bonds by a peremptory writ of mandate.

BELCHER, C. C., and HAYNE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the demurrer to the answer is sustained, and it is ordered that a peremptory writ of mandate issue commanding the defendant to sign the bonds.