[Nos. 4126]

# THE BELKNAP SAVINGS BANK OF LACONIA N. H. v. THE LAMAR LAND AND CANAL CO. ET AL.

1. MORTGAGES—FORECLOSURE—RECEIVERS—NOTICE.

Before an order of court appointing a receiver can legally be made, notice must be given to those entitled to be heard. In an action to foreclose a mortgage and praying for the appointment of a receiver by a minority holder of the bonds secured by the mortgage where the plaintiff alleges as a basis of its right to ask a foreclosure that the trustee had abandoned its trust, and that its interests was antagonistic to the mortgage creditors' notice to the trustee of the application for a receiver was not notice to or binding upon other bondholders not parties to the suit.

2. SAME—INTERVENTION—ESTOPPEL.

In an action by a holder of a minority of the bonds secured by a deed of trust, to foreclose and asking for a receiver, where another bondholder presented a petition of intervention asking to be made a party plaintiff and to adopt the allegations of plaintiff's complaint which petition was not granted and petitioner withdrew its petition to intervene as plaintiff and with others was permitted to appear as defendant, petitioner was not estopped by his intervention petition to object to orders previously issued appointing a receiver and authorizing the issuance of receiver's certificates.

3. SAME.

In an action by a holder of a minority of the bonds secured by a deed of trust, to foreclose and asking for a receiver, other bondholders by voluntarily appearing as defendants after the appointment of a receiver and the issuance of receiver's certificates, are not estopped thereby to object to the validity of the certificates on the ground that the parties affected by them had no notice of the application upon which they were based.

4. TRUSTS AND TRUSTEES—ACT OF TRUSTEE IN VIOLATION OF THE TRUST NOT BINDING ON CESTUI QUE TRUST.

A trustee for mortgage bondholders who in violation of the trust consents that receiver's certificates shall be given a preference lien over the mortgage bonds does not thereby bind the bondholders or estop them to object to the validity of such certificates.

5. SAME—ADMISSIONS OF TRUSTEE.

In an action to foreclose and for the appointment of a receiver by a

minority bondholder, wherein the trustee was made defendant and charged with being unfaithful to its trust and antagonistic to the bondholders, admissions in the answer of the trustee are not binding on other bondholders not parties to the action.

6. MORTGAGES—RECEIVER'S CERTIFICATES.

The fact that receiver's certificates sold at too great a discount is no reason why mortgage bondholders other than the purchasers of the certificates should 'not question their legality and object to giving them a preference over the mortgage bonds.

7. SAME—ESTOPPEL.

In an action by a minority mortgage bondholder to foreclose and for a receiver, the fact that certain receiver's certificates were issued after the other bondholders were made defendants in the action without objection on their part does not estop them to object to a former series of certificates issued before they were made parties to the action.

8. RECEIVER'S CERTIFICATES—FALSE REPRESENTATIONS.

Where in a foreclosure suit, by reason of false representations of plaintiff's agent receiver's certificates were sold to plaintiff for a less sum than plaintiff had authorized its agent to pay for them the court properly canceled such certificates to the amount of the difference between what the agent was authorized to pay and what he did pay, the certificates still being held by plaintiff.

. RECEIVER'S CERTIFICATES—PRIOR LIENS—PARTIES.

A purchaser of receiver's certificates takes them subject to the rights of parties who have prior liens upon the property and who have not, but should have, been brought before the court. If receiver's certificates are issued without prior lien holders having been brought before the court, when they do appear or are brought before the court they are entitled to contest the necessity, validity and amount of such certificates as fully as if such questions were then for the first time presented for determination.

10. CORPORATIONS—CANAL COMPANIES—RECEIVERS.

A canal company incorporated under the laws of Colorado for the purpose of irrigating its own lands and lands of its grantees is not a *quasi* public corporation in the sense that the equitable doctrine of preference should apply to it as in case of insolvent railroad corporations. The court has no power to appoint a receiver to conduct the business of such insolvent canal company and to authorize receiver's certificates for such purpose and to give such certificates a preference over, or co-ordinate lien with, prior mortgage bonds, without the consent of the bondholders.

*Error to the District Court of Prowers County.*

Messrs. HARKLESS, O'GRADY & CRYSLER and Mr. HARRIE H. HUMPHRIES for plaintiff in error.

Mr. C. H. BRIERLY, Mr. F. D. FULLER and Messrs. SCAMMON, MEAD & STUBENRAUCH for defendants in error.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

In this action, when it was instituted, the sole plaintiff was the Belknap Savings Bank, and the defendants were The Lamar Land and Canal Company, The Prowers County Land and Irrigation Company, The Lamar Canal Company (corporations organized under the laws of Colorado and hereafter referred to respectively as the Land, Irrigation and Canal Company), the Kansas Loan and Trust Company, and the Trust Company of America, foreign corporations, the former incorporated under the laws of Kansas, the latter under the laws of Missouri.

The object of the action was the foreclosure of a first trust deed or mortgage, executed by the Land Company to the Kansas Loan and Trust Company, as trustee, covering 4151 acres of land and an irrigating ditch and appurtenant water rights, to secure the payment of the Land Company's issue of $100,000 in bonds. This trust deed contained minute provisions defining the circumstances in which, naming the instrumentality by which, and furnishing the method in accordance with which, it might be foreclosed. If there was a failure of the mortgagor to pay interest on the bonds within thirty days after the same became due, the entire principal, at the option of the trustee, or the holders of a majority in interest of the issue, might be declared due and payable, whereupon the trustee might take possession of the property covered by the mortgage; and, under the power of sale contained in that

instrument, proceed to sell the same at public sale. This method was cumulative only to the ordinary foreclosure in court by the trustee upon default; in which event, at the discretion of the trustee, and at the written request of a majority of the holders in value of the bonds then unpaid, he might institute proceedings to foreclose the same in court.

At the time this action was brought, the principal of the bonds was not due, but there was a default in the payment of interest. The plaintiff was the owner of $5,000 of the first mortgage bonds, only one-twentieth in amount, of the entire issue. The majority bondholders made no request of the trustee to foreclose the mortgage before this suit was brought, and although the proof shows that plaintiff then knew that the Portsmouth Savings Bank (which became a defendant in the action long after its inception) was the owner of $25,000 of the bonds, and, if reasonable diligence had been used. the holders of the balance could have been found, no attempt was made to comply with the provisions of the mortgage relating to foreclosure. The ground assigned in the complaint as constituting the right of plaintiff to sue was that the Kansas Loan and Trust Company and the Trust Company of America, its successor, were antagonistic in interest to the bondholders.

The plaintiff, then, brought this action in its own behalf and in behalf of such other bondholders as might thereafter join in the action and share its cost and expenses. The reason for making the Irrigation and the Canal Companies defendants was that after the execution of the first mortgage a subordinate mortgage was given by the Land Company to the Kansas Loan and Trust Company, as trustee, which was afterwards foreclosed, and the property included therein, the same as that covered by the first mortgage, was sold, and by divers conveyances came into the hands of the Irrigation Company, which company placed a mortgage thereon, running to the same trustee, to secure an issue of $300,000 of

bonds, subject to the provisiens of the first mortgage; and the Irrigation Company, after its mortgage, called in the record the second mortgage, was given, deeded to the Canal Company the canal or irrigating ditch and its appurtenant water rights; and the Canal Company in turn executed to the same trustee, upon the property so acquired by it, another mortgage, which is called the third mortgage, subject to the provisions and liens of the two former ones.

The same day the action was begun plaintiff filed its petition therein for the appointment of a receiver, notice of which was given only to the three Colorado corporations defendant.    The court made the appointment and fifteen days thereafter authorized its receiver to issue not to exceed $25,-000 in receiver's certificates, which, when issued and sold, were to constitute a lien upon the mortgaged property superior to that of the first mortgage. These certificates. together with another issue ot $5,000 authorized in the following November upon like notice to the three defendants mentioned, and with like incidents, were sold by the receiver to the plaintiff bank at a discount of 12⅔ cents on the dollar of the face value.

More than five months after the first order for the issuance of certificates was entered, the first of the various other holders of first mortgage bonds (who are defendants in error upon this review) voluntarily appeared in the action, and about ten months thereafter other bondholders appeared, and were made parties, and under orders of court filed answers and cross comlaints, some of whom joined with plaintiff in requesting a foreclosure of the mortgage, and others of whom while apparently objecting thereto, as we read the record, virtually asked the same relief; some of whom confessedly, and others of whom, as it is claimed, while consenting to the foreclosure, objected to the appointment of the receiver, and the making of the receiver's certificates a lien prior to their own.    So far as we are advised, these bondholders had no

knowledge of the action, or of the former proceedings in the suit, until about the time their respective appearances were entered.

The question as to the *status* of these certificates was reserved by the court by special order until final hearing, and when this hearing was had, a decree was entered giving judgment against the defendants for the amount of the bonds and interest, and directing a sale of the mortgaged premises for the satisfaction of the mortgage debt, with the further provision that the amount of the receiver's certificates, less a certain portion which were held to be invalid, should be a concurrent and *pro rata* lien with the first mortgage bonds.

There were various other provisions of the decree with which some of the present defendants in error were dissatisfied, to review which they have prosecuted a separate writ of error under the title of *The Lamar Land and Canal Co. et al. v. The Belknap Savings Bank, et al. post p.* 344. None of the parties to the action were satisfied with all the provisions of the decree, and the Belknap Savings Bank, the original plaintiff in the action, has brought the case here as plaintiff in error for a review of that part of the decree with which it is dissatisfied, and the defendants in error have assigned cross errors to those provisions unfavorable to them. Such additional facts as are necessary to a full understanding of the questions presented will be stated further on in the discussion.

Numerous errors are assigned by both parties to the rulings of the trial court, which, in the argument of counsel for plaintiff in error, are condensed into four subdivisions, all of which, however, are comprehended under the one general specification that, as to plaintiff in error, the court erred in not adjudging the receiver's certificates to be a prior lien to that of the first mortgage; while defendants in error contend that they are inferior thereto. This, in the double form just

stated, is the principal question before us, though its determination necessarily involves consideration of various subordinate propositions on which its resolution depends.

Preliminary to the discussion, we observe that counsel for the respective parties concede that they radically differ in their statement of the facts embodied in the record, which difference, however, a close investigation shows consists in the inferences drawn from, or legal conclusion put upon, the facts by opposing counsel, rather than any substantial difference in a statement of the facts themselves. But we are constrained to say that where counsel do differ in stating facts, we have found that counsel for defendants in error in the main are correct. We also remark that certain important questions of practice are raised which, in the view we take of the main question, are not necessarily involved, but they are so interwoven with that question, and so fully argued that we think it proper to settle them in the interest of litigants, especially as ignoring them might give rise to misconseption. Other matters, supposed to estop the bondholders to attack the validity of the receivership proceedings, are pressed which should, likewise, receive our attention.

1. Much of the argument of counsel for plaintiff in error is devoted to the proposition, against which the trial court found that notice of application for appointment of a receiver, as well as that for the issuance of receiver's certificates, was given to the parties entitled to receive notice. Certainly, none of the bondholders got personal notice, for they were not at the time parties to the action, and no pretense is made that any information of the proceedings was given them directly. But it is insisted that personal service of notice of these applications was had upon their trustee, the Kansas Loan and Trust Company at its principal office in Topeka, Kansas, but there it no legal proof of any such notice, and, under the facts in this case, if it had been given,

the rights of the bondholders would not be jeopardized.   It must be born in mind that plaintiff's right to ask a foreclosure as a party plaintiff was based upon its charge that the trustee had abandoned its trust, and its interests were antagonistic to the mortgage creditors, and it comes with bad grace for plaintiff to say that notice to a faithless trustee, which is repudiated by plaintiff itself, will bind other bondholders not parties to the action.

Sections 371 and 372 of the code clearly contemplate that it is improper for a court to appoint a receiver without notice.   An appointment of a receiver is made by an order of the court, and before the order can legally issue, notice must be given to those entitled to be heard.   If the validity of the appointment of a receiver and the receiver's certificates depended solely on a compliance with the imperative requirements of the code, we would have no hesitation in saying that neither order was valid, and might be wholly disregarded by the parties thereby injuriously affected, for no such notice was given.

2.   But, several months after the certificates were issued and at different times, the holders of $94,000 of first mortgage bonds appeared in the action either voluntarily or in response to service of summons.   One of the defendants in error, the Portsmouth Savings Bank, the owner of $25,000 of the bonds, first filed its petition of intervention asking to be made a party plaintiff and to adopt the allegations of the complaint except in so far as modified by its ownership of bonds.   It is isisted by plaintiff in error that by this act that bank is estopped to question the appointment of a receiver and the issuance of the certificates; and an estoppel also arises as it is said, because it and the other defendants in error, owners of mortgage bonds, appeared in the action and asked for a foreclosure.

If there was nothing in the record to limit the legal effect of this petition of intervention, it might be that the Ports-

mouth Savings Bank would not now be in a position to attack the allegations of the original complaint; but the record shows that the court did not grant the petition, and it was afterwards withdrawn, whether upon application of the intervenor or otherwise, the abstract does not make certain. However that may be, the court afterwards permitted the bank and the other bondholders to appear as defendants in the action, with leave to answer the complaint and to file cross complaints, and permission was given to attack the orders appointing the receiver and authorizing the issuance of certificates. The defendants availed themselves of the privilege and attacked the orders as void for the reason, among others, that no notice was given to the parties affected by them of the applications upon which they were based.

In order to sustain the ruling of the court in granting such permission, we must presume that the showing was satisfactory and sufficient, and we find nothing in the record that impeaches its correctness. The defendants, therefore, were not for the reasons urged estopped upon the final hearing, nor are they now, to question the validity of the receiver's certificates.

3. It is further alleged that all of the first mortgage bondholders are estopped by the prior action of their trustee. Before the present action was begun, the Kansas Loan and Trust Company, as trustee under the third deed of trust, given to secure an indebtedness of the mortgagor Canal Company of $30,000, brought its action in the district court of Prower's county for the foreclosure of the same, and asked for and obtained the appointment of a receiver, who thereupon took possession of the property; and upon his petition therefor the receiver was authorized to issue receiver's certificates and sell the same, which, when sold, should constitute a first lien. But the receiver was unable to sell them because no one considered them enforceable against the two prior trust deeds. But the accommodating

trustee, being trustee under all these mortgages, thereupon, in the action brought to foreclose the last trust deed, entered its appearance as trustee under the two former ones, and consented that the receiver's certificates which the court theretofore authorized might take precedence of the two prior liens. Still the receiver was unable to sell these instruments for the very good reason that such action of the trustee under the prior encumbrances was so palpably a violation of its trust and so destructive of the rights of its beneficiaries thereunder that no sane investor would part with his money for paper tainted with such defects. Such being the situation, the receiver appointed by the court in the former action resigned his trust, which was accepted on the same day this action was begun and the present receiver appointed. It is now, strange to say, argued by plaintiff in error that this action of the faithless trustee of the first mortgage bondholders estops them to question the validity of the certificates issued by the receiver in this action, the proceeds of the sale of some of which, it seems, were applied to the payment of expenses incurred by the receiver in the former one. It should, also, be said that the former action, against the objections of some of the defendants in error, was consolidated for trial with this one, but after the order of consolidation was made no further steps were taken and no judgment therein rendered. We decline to dignify, with discussion, the argument that such action of a trustee binds its beneficiaries. We merely dismiss it with the observation that neither in morals nor in law will it bear scrutiny, and a court of equity will not listen for a moment to such an unconscionable proposition.

4. Certain admissions in the answer of the Kansas Loan and Trust Company to the effect that the first mortgage bondholders were willing, and should have been given an opportunity, to purchase these certificates, is also sought to be invoked as a reason why the bondholders should now be

estoped, but this company, charged by plaintiff itself with being faithless to the trust, cannot bind them. We find nothing in the answer of the defendants trustees of the Florence Kindergarten and other bondholders with relation to the purchase by them of these certificates that will estop them now to question their validity. The fact that they were sold at too great a discount, as charged, is no reason why bondholders, other than plaintiff, are not in a position to question their legality for other reasons apparent on the face of the record.

5. Another ground of estoppel is said to be that after all of the defendants in error were in court an order was made for the issuance and sale of certificates aggregating $7,000 in addition to the issue of $30,000 sold before the majority bondholders were present or had notice; and that to this last issue no objection was made by any of them. We fail to see why, merely because the bondholders do not now see fit to complain of the issuance of the last series, they should, for that reason, be estopped to question the validity of the two earlier ones. Various good reasons may exist for their approval of what was done after they were in court.

6. The trial court found that of the issue of $30,000 there were certificates aggregating about $2,250 which should be canceled. It appears that Browning, agent of the plaintiff bank, whose representative he was throughout this litigation and by whose acts plaintiff is bound, negotiated with the receiver for the purchase of the certificates by his principal, and upon his representations to the court and receiver that the principal would give only 87½ cents on the dollar for the certificates, sale was made at that discount. The proof conclusively shows that the bank authorized its agent to pay for the entire issue $2,250 more than was actually paid by him and deposited with the receiver, and the court, as we think rightly, disallowed and canceled the certificates to this amount. There is no question here of innocent purchasers,

for the bank still holds all of the certificates.

We conclude this branch of the case with the statement that, were it necessary so to hold, we would have no hesitation in declaring that the three Colorado, and the Kansas and Missouri, corporations, the original defendants in this action, were practically identical. The same persons either owned or controlled the capital stock of each and all, and the same persons controlled and managed them all. The trustee and its successor were antagonistic to the interests of the first mortgage bondholders and throughout the financial embarrassments which arose unquestionably acted in the interests of the mortgagor and its successors, which were identical with their own.

7. That this action as, and when, instituted with the parties then before it was improperly brought, and that the court should not then have appointed a receiver and authorized the issuance and sale of certificates, we entertain no doubt, and had not a majority in interest of bondholders subsequently appeared and joined with the original plaintiff in asking for a foreclosure, the decree would not be binding on them in any particular.

True it is that some of the holders of the bonds insist that they have not asked for a foreclosure, but it is clear that a majority in interest have co-operated with the plaintiff in that respect, and the other conditions of the mortgage being complied with, when this condition was met, the right to a foreclosure was fixed. This, however is far from saying that all the bondholders must be held to have adopted the ancillary proceeding of the receivership. It has been decided by the supreme court of the United States that one who takes receiver's certificates must be deemed to have taken them subject to the rights of parties who have prior liens upon the property and who have not, but should have, been brought before the court. These prior lien holders are en-

Vol. 28–16

titled to their day in court, and if the certificates have been
issued before that time, when they do appear in court, or are
brought before it, lien holders become entitled to contest the
necessity, validity and amount of all such certificates as fully
as if such questions were then for the first time presented
for determination.   *Union Trust Co. et. al. v. Midland Co.,*
117 U. S. 434.

If our code procedure permits of this (which we may in
this case safely assume but not decide), as under equity
practice in the federal courts is proper, we may determine
this question the same as if the bondholders were present
when the original applications were made.  For it appears
that all of the parties affected had an opportunity to be heard
before final hearing.

There recurs, then, the main question in the case, to
which the preliminary discussion clears the way: Should
these certificates have been issued by the court and made a
lien upon the property superior to, or co-ordinate with, that
of the first mortgage bonds without the consent of the bond-
holders?

In the case of *The International Trust Co. v. United Coal
Co.,* 27 Colo. 246 (60 Pac. Rep. 621), this court held that, in
administering the affairs of an ordinary insolvent private
business corporation for which a receiver has been ap-
pointed, a court of equity has not power to authorize the
receiver to make the indebtedness incurred for carrying on
the business, and without reference to preserving the prop-
erty, a lien on the *corpus* of the property superior to that of
the prior lien holders without their consent; and we said
that in the supreme court of the United States the rule has
been limited to insolvent railroad corporations.  If the Land
Company, which is the corporation affected here, is only an
ordinary private business corporation, the decision in the
International Trust Co. case governs, and it would follow
that the certificates are invalid as to the first mortgage bond-

holders. But the claim is made that the mortgagor company is a *quasi* public corporation. If it is, and of the same char-, acter as railroad corporations, and the principles of preferential claims of receiverships which have generally, if not always, been confined to railroad corporations are applicable here, then it would follow that the certificates are valid.

We are cited to decisions of the supreme court of California declaring that irrigation districts, formed under the laws of that state, and canal companies organized for acquiring and carrying water for irrigation, mining and manufacturing purposes, are, in the one instance, public municipal corporations, and in the other, *quasi* public, and subject to the control and regulation of the state. *Miners' Ditch Co. v. Zellerbach*, 37 Cal. 543; *Price v. Riverside L. & I. Co.*, 56 Cal. 431; *Irrigation District v. Williams*, 76 Cal. 360; *Irrigation District v. DeLappe*, 79 Cal. 351; *In re Madera Irrigation Dist.*, 92 Cal. 296.

Our attention is also called to *San Diego L. & T. Co. v. City of National City et al.*, 74 Fed. Rep. 79; *Atlantic Trust Co. v. W. C. & I. Co.*, 79 Fed. Rep. 39; *Fallbrook Irrigation Dist. v. Bradley*, 164 U. S. 112. The canal companies referred to in the opinions in the 37th and 56th Cal. were held to be *quasi* public corporations, principally, if not exclusively, upon the ground that such corporations may exercise on behalf of the public the power of eminent domain, and since, under their laws, no man, or company of men incorporated or otherwise, can take the property of a citizen for their, or his own, exclusive benefit, such canal companies were held to be *quasi* public in character. The cases from 76th, 79th and 92d Cal., *supra*, involved irrigation districts formed under an act of the legislature of California which clearly constituted them public municipal corporations, subdivisions of the state government itself; and in all of the California and federal cases cited the canal companies or irrigation districts, in question were clearly charged with a

public duty, and were required without discrimination in favor of, or against, any, to carry and deliver water to all persons capable of utilizing their facilities.

The Atlantic Trust Co. case is most nearly in point with the one at bar, and in the opinion by Circuit Judge McKenna he assumed that the law as to railroads is the same as that applicable to water companies organized under the laws of California. He uses this language: "But there are analogies between railroads and irrigation districts which justify it, Irrigation districts, in a sense, are new things to our jurisprudence, but old principles apply to them when the conditions of their application exist." This language indicates that the rule enforced was to be confined to such public corporations as were created by the California statute. And referring to the fact that canal companies had been declared by the supreme court of California to be *quasi* public corporations the learned justice declared that it was just as essential to the interests of the public that such a canal company should be kept a going concern as that a railroad company should continue in the exercise of its functions; and therefore the condition was present which made the equitable doctrine of preference applicable.

In the Fallbrook case, *supra*, the supreme court of the United States, following the decisions of the supreme court of California, held that the irrigation of really arid lands is a public purpose, and the water thus used is put to a public use, and that irrigation districts organized under the laws of California to irrigate really arid lands are public municipal corporations. There was no attempt, however, in that case, to apply to them the equitable doctrine of preference. If the doctrine, as applied by Mr. Justice McKenna in the Atlantic Trust Co. case, was limited to irrigation districts as they exist in California, it would be for reasons not existing in the case at bar, at least because other important conditions are present there which are absent here; and it seems

that the same may be said of canal companies organized under the general incorporation laws of that state, which require them to deliver and sell water to all persons alike, without discrimination.

The Lamar Land Company, the mortgagor in this case, was not organized for such purposes as those for which canal companies and irrigation districts referred to in the foregoing cases were incorporated. The mortgagor here was incorporated primarily for the purpose of acquiring and selling lands and for bringing the same under cultivation, and the appropriation of water that it made from the natural stream was for the purpose of irrigating its own lands, so long as it retained their ownership, and thereafter the lands of its grantees to whom the right to the use of the water was to be transferred in connection with the sale of the land. Though the reclamation of arid lands is greatly to the interests of the state, yet the land company was engaged in a purely private enterprise for the benefit of its stockholders, and no lands except those belonging to it and its grantees were entitled to, and could, receive any of the water of its appropriation.

By section 5 of article 16 of our constitution, unappropriated waters of natural streams are declared to be the property of the people, the right to use which only is subject to appropriation. By section 7 of the same article, all natural persons and corporations may, by rendering compensation, have the right of way over private lands for ditches built for carrying water for domestic and other specified purposes. By section 14 of article 2, power is given to any natural person or corporation for the specified purposes to take private property for *private use.* Construing these sections together, it might not be difficult to show a very important distinction between the constitution and laws of this state and those of California in relation to the use of water for irrigation, as to the power possessed by appropriators of water to

acquire rights of way for irrigating ditches by condemnation, and as to the nature of the use whose acquisition might be thus enforced.

It may be conceded that for some purposes, and to a certain extent, companies organized under the laws of this state for constructing ditches and canals for diverting water for purposes of irrigation may be *quasi* public corporations, and subject to reasonable regulation by the state. And for the purposes of this opinion, that presumption may be indulged, and yet we are clearly of opinion that the defendant land company is not a *quasi* public corporation in the sense that the equitable doctrine of preference should apply to it as in case of insolvent railroad corporations in the hands of a receiver. If it is, then every corporation organized under the laws of this state for diverting water for manufacturing, mining, milling, sanitary and domestic purposes, and every natural person who builds a ditch for irrigating his own lands would be subject to the operation of the same principle in case of insolvency and the administration of its, or his, affairs in a court of equity, for the same right of eminent domain is given to each and all of such persons and corporations.

A case directly in point is *Hanna v. State Trust Co.*, 70 Fed. Rep. 2. The ditch company whose trust deed or mortgage was there sought to be foreclosed was organized under the laws of Colorado, and in all substantial respects its objects were the same as those of the defendant land company whose mortgage was here foreclosed. It was held, in an elaborate opinion by Mr. Justice Caldwell, that the equitable doctrine of preference, as theretofore applied to railroad corporations, should not be extended to a ditch company. We approved this doctrine in our decision in the International Trust Co. case, *supra*, and subsequent examination serves to strengthen our conviction.

In addition to the foregoing considerations, it should be

observed that, as appears from the record, the plaintiff bank sought a foreclosure for the purpose of protecting its own interests. There is nothing before us to show that the interests of the water consumers necessitated the granting of the extraordinary orders that were made by the trial court. For aught that appears to the contrary, the best interests of the bondholders did not require the expenditure on the mortgaged property of the large sums which the receiver made. However that may be, they did not consent thereto. The first mortgage indebtedness amounted to $100,000. The receivership lasted less than two years, and during that time an indebtedness was incurred of $37,000,—more than one-third of the entire mortgage debt, and probably more than two-thirds of the entire value of the property. There was no such showing of a pressing public necessity to justify the court in taking possession of this property and keeping it a going concern and making the expenses thereof a preferential claim to the prior contract liens, even if the equitable doctrine invoked was applicable to the ditch company. The present case furnishes another illustration of the usual result which comes from an attempt by a court of equity to carry on an enterprise which has bankrupted the original owners. But we refuse to extend this doctrine of preferential claims to such corporations as ordinary ditch companies organized under the laws of this state.

The objections of plaintiff in error to the decree are resolved against it, and the objections of defendants in error are sustained. The district court erred in making the receiver's certificates a co-ordinate lien with the first mortgage or trust deed. They should be made subordinate thereto. The cause will be remanded with instructions to the district court to modify its decree accordingly. The costs of the proceedings here will be taxed to the plaintiff in error.

*Reversed.*